[This decision has been published in *Ohio Official Reports* at 95 Ohio St.3d 59.]

THE STATE EX REL. SHEMO ET AL. *v.* CITY OF MAYFIELD HEIGHTS ET AL.

[Cite as *State ex rel. Shemo v. Mayfield Hts.*, 2002-Ohio-1627.]

*Mandamus sought to compel city of Mayfield Heights et al. to commence appropriation proceedings to determine the amount for the city's temporary taking of relator's property—Writ granted, when.*

(No. 01-1325—Submitted February 5, 2002—Decided April 10, 2002.)

IN MANDAMUS.

_____

*Per Curiam.*

{¶ 1} Relators, Michael A. Shemo and Larry Goldberg, are co-owners as trustees of a 22.6-acre parcel of land in respondent city of Mayfield Heights. Relators acquired the parcel in January 1992.

{¶ 2} On March 19, 1992, relators filed a complaint in the Cuyahoga County Court of Common Pleas, naming Mayfield Heights and the Ohio Attorney General as defendants. Relators requested a declaratory judgment that the existing U-1(1) Single-Family House District zoning classification unconstitutionally restricted the use of the property to single-family residential development. Relators initially wanted the property rezoned to permit mid-rise, multifamily development.

{¶ 3} In June 1995, relators voluntarily dismissed the declaratory judgment action and refiled it. Relators again requested a judgment declaring that the U-1(1) zoning classification was unconstitutional as applied to their property. This time, however, relators requested that the property be rezoned to U-4 Local Retail and Wholesale District so that retail and warehouse development would be permitted. Relators alleged that the U-1(1) zoning classification denied them an economically viable use of the property without substantially advancing a legitimate interest in the health, safety, or welfare of Mayfield Heights.

**{¶ 4}** In December 1995, relators and Mayfield Heights stipulated that the U-1(1) zoning classification as applied to relators' property was invalid. Over relators' objection, the city rezoned the property to U-2-A Planned Unit Development District, which restricted the use of the property to attached and detached single-family residential dwellings. Relators then challenged the constitutionality of this new classification in their pending declaratory judgment action.

**{¶ 5}** In May 1996, following a trial, the common pleas court held that the U-2-A zoning classification was unconstitutional as applied to relators' property. The common pleas court found that the U-2-A zoning classification did not substantially advance any legitimate health, safety, or welfare concern of Mayfield Heights and that the U-2-A zoning rendered the property economically nonviable.

**{¶ 6}** In September 1997, on remand from the court of appeals, the common pleas court entered a judgment incorporating its May 1996 declaration that the U-2-A zoning classification was unconstitutional as applied to the property and held that relators' proposed retail use of the property, as described in their site plan, was reasonable. The common pleas court ordered that relators make the improvements to Golden Gate Boulevard specified in their site plan, that Mayfield Heights take actions to facilitate these road improvements, that the city and municipal officers named as defendants be enjoined from interfering with relators' proposed retail use of the property and installation of the road improvements, and that the city and the individual defendants allow retail development and use consistent with the court's judgment.

**{¶ 7}** On appeal, the court of appeals vacated the common pleas court judgment and remanded the cause for further determination. On further appeal, we reversed the judgment of the court of appeals and reinstated the September 1997 common pleas court judgment. *Shemo v. Mayfield Hts.* (2000), 88 Ohio St.3d 7, 722 N.E.2d 1018 ("*Shemo I*"). In so holding, we stated that "[s]ince [relators] have

shown that the city lacks any legitimate governmental health, safety, and welfare concerns in support of the U-2-A zoning classification, we find that the trial court was correct in declaring the U-2-A zoning ordinance unconstitutional." *Id*. at 13, 722 N.E.2d at 1024. We also found that competent, credible evidence supported the common pleas court's conclusions that the property was not suitable for residential use and that relators' proposed commercial use of the property was reasonable. *Id.* at 12-13, 722 N.E.2d 1018.

{¶ 8} In August 2000, Mayfield Heights enacted an ordinance in which it claimed ownership of certain unimproved streets located on relators' property and authorized the mayor to sell these "paper streets." These streets had been dedicated to the city in June 1927, but had never been constructed. After Mayfield Heights accepted the dedication of an adjacent subdivision in 1959, the paper streets were blocked from access to actual streets. The city did not claim ownership of the paper streets during the declaratory judgment proceeding even though there was testimony and evidence concerning them during that proceeding.

{¶ 9} Relators subsequently filed a common pleas court action to enjoin the sale of the paper streets and to declare that they had been abandoned by the city or, if not abandoned, to declare them vacated under R.C. 723.09. In December 2000, the parties resolved that case by consent and agreed that the paper streets were vacated and that relators were declared the owners of the property that contained the paper streets.

{¶ 10} In March 2001, relators applied to respondent Mayfield Heights Planning and Zoning Commission for road improvements consistent with the common pleas court judgment reinstated by this court in *Shemo I.* The development also required a modification of an easement by an adjacent property owner for a new access drive. The city council initially disregarded the property owner's application for an improvement to modify the easement because it found that relators were unable to demonstrate either that they had obtained a wetlands permit

for the property or that no permit was required. No city ordinance, however, authorized the planning commission or city council to deny building permits based upon environmental regulations.

{¶ 11} In April 2001, the planning commission approved the application for modification of the easement, but it refused to completely approve relators' road improvement plans, instead restricting the use of Maplewood Road, which provides access to the proposed retail development, to emergency use. The city council confirmed the decision of the planning commission. As required by *Shemo I*, the city rezoned relators' property from U-2-A to U-4 in April 2001.

{¶ 12} On May 16, 2001, relators filed a complaint in this court against respondents, Mayfield Heights and its mayor, city council, and planning commission. Relators requested a writ of mandamus to compel respondents to grant final approval of their road improvement plans, including unrestricted, nonemergency access to Maplewood Road, in accordance with the September 1997 common pleas court judgment reinstated by this court in *Shemo I*. Relators also requested a writ of mandamus to compel the city to commence appropriation proceedings in the Cuyahoga County Common Pleas Court, Probate Division, to determine the amount of the city's alleged regulatory taking of relators' property.

{¶ 13} In July 2001, we dismissed without prejudice relators' mandamus action because they had failed to fully comply with the affidavit requirement of S.Ct.Prac.R. X(4)(B). *State ex rel. Shemo v. Mayfield Hts.* (2001), 92 Ohio St.3d 324, 750 N.E.2d 167 ("*Shemo II*").

{¶ 14} On July 23, 2001, relators refiled their mandamus action, which fully complied with S.Ct.Prac.R. X(4)(B). On relators' motion, we expedited our consideration of relators' mandamus claim relating to their road improvement plans for the proposed retail development. Upon consideration, we granted a peremptory writ of mandamus to compel respondents to approve relators' road improvement plans in connection with the proposed retail development. This included

unrestricted access to and from Maplewood Road once the specified conditions are met, except for vehicles weighing over ten thousand pounds, and granting all other approvals and permits necessary for the retail development of the property ordered by the common pleas court's September 2, 1997 judgment. *State ex rel. Shemo v. Mayfield Hts.* (2001), 93 Ohio St.3d 1, 752 N.E.2d 854 ("*Shemo III*"). On August 20, 2001, the city council enacted a resolution consistent with *Shemo III* by removing the emergency-use restriction for Maplewood Road.

{¶ 15} We subsequently granted an alternative writ and issued a schedule for the presentation of evidence and briefs on relators' remaining mandamus claim. *State ex rel. Shemo v. Mayfield Hts.* (2001), 93 Ohio St.3d 1431, 755 N.E.2d 354. Relators introduced evidence that "[a]s a direct consequence of the City's unlawful enforcement of its U-1(1) and U-2A residential zoning against [the] Property and the City's failure to comply with the Trial Court's Judgment set forth above, [relators] have been deprived of the use of [their] Property from March 19, 1992 until August 20, 2001." In addition, respondents' actions delayed construction of a store to be built on the property as part of the development plan from the summer of 2001 until the spring of 2002.

{¶ 16} This cause is now before the court to consider relators' claim for a writ of mandamus to compel appropriation proceedings as well as respondents' request for oral argument.

Respondents' Request for Oral Argument

{¶ 17} Respondents request oral argument because, among other reasons, it will afford the parties the opportunity "to focus upon the significant issues" and will "enhance a thorough understanding and appreciation of the case."

{¶ 18} We have resolved comparable takings cases without the necessity of oral argument. See, *e.g., State ex rel. Elsass v. Shelby Cty. Bd. of Commrs.* (2001), 92 Ohio St.3d 529, 751 N.E.2d 1032; *State ex rel. Painesville v. Lake Cty. Bd. of Commrs.* (2001), 93 Ohio St.3d 566, 569, 757 N.E.2d 347, 351.

{¶ 19} Based on the foregoing, we deny respondents' request and proceed to the merits of relators' mandamus claim.

Mandamus—Appropriation—Compensable Taking

{¶ 20} Relators request a writ of mandamus to compel respondents to commence appropriation proceedings for the city's temporary taking of their property.

{¶ 21} The United States and Ohio Constitutions guarantee that private property shall not be taken for public use without just compensation. Fifth and Fourteenth Amendments to the United States Constitution; Section 19, Article I, Ohio Constitution. Mandamus is the appropriate action to compel public authorities to institute appropriation proceedings where an involuntary taking of private property is alleged. *State ex rel. Elsass v. Shelby Cty. Bd. of Commrs.*, 92 Ohio St.3d at 533, 751 N.E.2d 1032. Relators have the burden of proving their entitlement to the requested extraordinary relief in mandamus. *Id.*

{¶ 22} We must first determine whether relators have established a compensable taking of their property.

{¶ 23} The United States Supreme Court has consistently held that "application of land-use regulations to a particular piece of property is a taking only 'if the ordinance does not substantially advance legitimate state interests      * * * or denies an owner economically viable use of his land.' " See *United States v.*

*Riverside Bayview Homes, Inc.* (1985), 474 U.S. 121, 126, 106 S.Ct. 455, 88 L.Ed.2d 419, quoting *Agins v. Tiburon* (1980), 447 U.S. 255, 260, 100 S.Ct. 2138, 65 L.Ed.2d 106; *Keystone Bituminous Coal Assn. v. DeBenedictis* (1987), 480 U.S. 470, 485, 107 S.Ct. 1232, 94 L.Ed.2d 472.

{¶ 24} We have also adopted this test for a taking caused by a zoning law. See *Goldberg Cos., Inc. v. Richmond Hts. City Council* (1998), 81 Ohio St.3d 207, 211, 690 N.E.2d 510, quoting *Agins*, 447 U.S. at 260, 100 S.Ct. 2138, 65 L.Ed.2d 106 (" 'The application of a general zoning law to particular property effects a taking if the ordinance does not substantially advance legitimate state interests * * * or denies an owner economically viable use of his land * * *' ").

{¶ 25} This test is disjunctive, *i.e.*, a compensable taking can occur *either* if the application of the zoning ordinance to the particular property is constitutionally invalid, *i.e.*, it does not substantially advance legitimate state interests, *or* denies the landowner all economically viable use of the land. Although in previous cases we have applied the test in a conjunctive fashion, those cases involved merely challenges to the constitutionality of these ordinances and did not involve takings claims. See, *e.g., Gerijo, Inc. v. Fairfield* (1994), 70 Ohio St.3d 223, 638 N.E.2d 533, syllabus, modified in part in *Goldberg*, 81 Ohio St.3d 207, 690 N.E.2d 510, syllabus. Similarly, although some of our language in *Goldberg* could be construed to specify that both of the *Agins* prongs must be met in order to constitute a compensable taking, see 81 Ohio St.3d at 211, 213, 690 N.E.2d 510, this language is dicta because the landowner in *Goldberg* did not claim that the application of the challenged zoning regulation to its property constituted a taking.

{¶ 26} We now clarify that satisfaction of either prong of the *Agins* test establishes a taking. We implicitly recognized this in *BSW Dev. Group v. Dayton* (1998), 83 Ohio St.3d 338, 343, 699 N.E.2d 1271, where we noted that "*given BSW's failure to properly raise any constitutional issue of whether the Dayton historic preservation ordinances substantially advance legitimate state interests* *

* * BSW could only establish entitlement to appropriation proceedings if it established that appellees' denial of the demolition permit denied BSW all economically viable use of the Wilcon Building property." (Emphasis added.) More important, this clarification comports with the plain language of the *Agins* test. In other words, "[w]here a regulation places limitations on land that fall short of eliminating all economically beneficial use, a taking nonetheless may have occurred * * *."[1] *Palazzolo v. Rhode Island* (2001), 533 U.S. 606, 617, 121 S.Ct. 2448, 2457, 150 L.Ed.2d 592, 607.

{¶ 27} Relators claim that they have established a taking because they have satisfied either prong of the *Agins* disjunctive test. It is evident that relators have satisfied the first prong, *i.e.*, the application of the U-1(1) and U-2-A zoning classifications to their property was unconstitutional in that the application of these classifications did not substantially advance legitimate state interests. The parties stipulated that the U-1(1) zoning classification as applied to relators' property was unconstitutional, and the common pleas court found, in the declaratory judgment reinstated by this court in *Shemo I*, that the U-2-A zoning classification was also unconstitutional because, as applied to relators' property, it did not substantially advance any legitimate health, safety, or welfare concern of Mayfield Heights. Respondents are collaterally estopped from asserting otherwise. See *State v. Bey* (1999), 85 Ohio St.3d 487, 491, 709 N.E.2d 484, quoting *Thompson v. Wing* (1994), 70 Ohio St.3d 176, 183, 637 N.E.2d 917 ("'Collateral estoppel [issue preclusion] prevents parties * * * from relitigating facts and issues in a subsequent suit that were fully litigated in a prior suit' ").

---

1. For state appellate cases expressing confusion over whether the test is conjunctive or disjunctive, see *Rumpke Rd. Dev. Corp. v. Union Twp. Bd. of Trustees* (1996), 115 Ohio App.3d 17, 684 N.E.2d 353; *MDJ Properties v. Union Twp. Bd. of Trustees* (Mar. 27, 2000), Clermont App. Nos. CA99-02-013 and CA99-02-019, unreported, 2000 WL 313502; *James Place Properties, Inc. v. Madison Twp. Bd. of Trustees* (Sept. 25, 1998), Lake App. No. 97-L-143, unreported, 1998 WL 682347; cf. *Wilson v. Union Twp Trustees.* (Oct. 26, 1998), Clermont App. No. CA98-06-036, unreported, 1998 WL 744089, holding that *Goldberg* adopted the *Agins* disjunctive test for takings claims.

{¶ 28} It is less clear whether relators satisfied the second prong of the *Agins* test, *i.e.*, that the application of the U-1(1) and U-2-A zoning classifications to their property denied them all economically viable use of their land. In this regard, our judgment in *Shemo I*, which reinstated the common pleas court's September 1997 declaratory judgment, did not determine this issue. Although in *Shemo I* we concluded that relators introduced competent, credible evidence supporting the declaration that the property was not suitable for residential use, that does not necessarily mean that no economically viable use remained upon the application of the unconstitutional zoning classifications. And even though relators' evidence in this mandamus action states that the U-1(1) and U-2-A residential zoning deprived them of "*the use* of [their] Property," it does not specify that it deprived them of *all economically viable use* of their property. (Emphasis added.) Relators therefore did not establish the second prong of the *Agins* test.

{¶ 29} Nevertheless, because relators need to establish only one prong of the *Agins* disjunctive test in order to prove a taking, their satisfaction of the first prong is sufficient. The U-1(1) and U-2-A single-family residential zoning classifications were unconstitutionally applied to relators' property, and the property was, in fact, not suitable for this residential use. Therefore, relators have proved a taking of their property.

Effect of Existence of Contested Zoning at the Time of Acquisition on Takings Claim

{¶ 30} Respondents contend that there can be no taking because the challenged single-family residential zoning existed at the time relators acquired the property and respondents did not further restrict the preexisting residential use of the property after relators' acquisition of it.

{¶ 31} Respondents' contention lacks merit. The United States Supreme Court recently rejected a similar argument that a purchaser or a successive title

holder is deemed to have notice of an earlier-enacted land restriction and is barred from claiming that it effects a taking:

"The theory underlying the argument that post-enactment purchasers cannot challenge a regulation under the Takings Clause seems to run on these lines: Property rights are created by the State. * * * So, the argument goes, by prospective legislation the State can shape and define property rights and reasonable investment-backed expectations, and subsequent owners cannot claim any injury from lost value. After all, they purchased or took title with notice of the limitation.

"The State may not put so potent a Hobbesian stick into the Lockean bundle. The right to improve property, of course, is subject to the reasonable exercise of state authority, including the enforcement of valid zoning and land-use restrictions. * * * The Takings Clause, however, in certain circumstances allows a landowner to assert that a particular exercise of the State's regulatory power is so unreasonable or onerous as to compel compensation. Just as a prospective enactment, such as a new zoning ordinance, can limit the value of land without effecting a taking because it can be understood as reasonable by all concerned, other enactments are unreasonable and do not become less so through passage of time or title. *Were we to accept the State's rule, the post-enactment transfer of title would absolve the State of its obligation to defend any action restricting land use, no matter how extreme or unreasonable. A State would be allowed, in effect, to put an expiration date on the Takings Clause. This ought not to be the rule. Future generations, too, have a right to challenge unreasonable limitations on the use and value of land.*

"Nor does the justification of notice take into account the effect on owners at the time of [the] enactment, who are prejudiced as well. * * * The proposed rule is, furthermore, capricious in effect. The young owner contrasted with the older owner, the owner with the resources to hold contrasted with the owner with the need to sell, would be in different positions. The Takings Clause is not so quixotic. *A blanket rule that purchasers with notice have no compensation right when a claim*

*becomes ripe is too blunt an instrument to accord with the duty to compensate for what is taken.*"  (Emphasis added and citations omitted.)  *Palazzolo*, 533 U.S. at 626-628, 121 S.Ct. at 2462-2463, 150 L.Ed.2d at 613-614.

{¶ 32} Respondents' reliance on cases like *Community Concerned Citizens, Inc. v. Union Twp. Bd. of Zoning Appeals* (1993), 66 Ohio St.3d 452, 613 N.E.2d 580, and *Singer v. Fairborn* (1991), 73 Ohio App.3d 809, 598 N.E.2d 806, is misplaced.  *Community Concerned Citizens* involved a challenge to an administrative denial of a conditional-use permit rather than a takings claim premised on the unconstitutional application of a zoning ordinance.  And in *Singer*, the landowner challenged a city's denial of his request for rezoning rather than the constitutionality of the ordinance itself.  73 Ohio App.3d at 815, 598 N.E.2d 806.

Effect of Invalidation of Challenged Zoning Ordinances on Takings Claim

{¶ 33} Respondents next assert that once the zoning ordinances were invalidated as applied to relators' property, the case is terminated and relators are not entitled to compensation for the period that the unconstitutional ordinances were applied to the property.  Respondents cite our following statement from *Goldberg*, 81 Ohio St.3d at 213, 690 N.E.2d 510:

"If the landowner has challenged the constitutionality of zoning and also alleged that it constitutes a taking of the property, the case is terminated if the zoning is found to be unconstitutional, because the landowner is free of the zoning that restricted the use of the land."

{¶ 34} Respondents' contention is meritless.  The cited dicta did not consider the possibility of a claim for temporary taking because the landowner therein did not claim a taking.  *Id.*, 81 Ohio St.3d at 213, 690 N.E.2d 510.

{¶ 35} More important, the United States Supreme Court has declared that temporary takings are compensable:

"Once a court determines that a taking has occurred, the government retains the whole range of options already available—amendment of the regulation,

withdrawal of the invalidated regulation, or exercise of eminent domain. Thus we do not, as the Solicitor General suggests, 'permit a court, at the behest of a private person, to require the . . . Government to exercise the power of eminent domain . . . .' * * * We merely hold that where the government's activities have already worked a taking of all use of property, no subsequent action by the government can relieve it of the duty to provide compensation for the period during which the taking was effective." (Ellipsis *sic*.) *First English Evangelical Lutheran Church of Glendale v. Cty. of Los Angeles* (1987), 482 U.S. 304, 321, 107 S.Ct. 2378, 96 L.Ed.2d 250.

{¶ 36} Although *First English* involved the second prong of the *Agins* takings test rather than the first prong, its holding "still contains nuggets of language helpful to resolution of some other inverse condemnation issues not directly addressed." See, generally, 8 Rohan & Reskin, Nichols on Eminent Domain (3 Ed.2001) 14E-22, Section 14E.04[2]. In other words, "[t]he *First English* court stated that damages from 'temporary' takings, that is, resulting from interim ordinances, or presumably, from ordinances intended to be permanent but later invalidated by the courts as a taking and therefore effectively transformed into an interim ordinance, are to be 'measured by the principles normally governing the taking of a right to use property temporarily,' that is, in the same way as in eminent domain actions for temporary use of property." (Footnote omitted.) *Id.* at 14E-23, Section 14E.04[2], quoting *First English*, 482 U.S. at 318, 107 S.Ct. 2378, 96 L.Ed.2d 250.

{¶ 37} Therefore, the invalidation of the U-1(1) and U-2-A residential zoning ordinances as applied to relators' property did not relieve respondents of their duty to compensate relators for the temporary taking of their property. When the burden on the landowner "results from governmental action that amounted to a taking, the Just Compensation Clause of the Fifth Amendment requires that the government pay the landowner for the value of the use of the land during this

period.  * * * Invalidation of the ordinance or its successor ordinance after this period of time, though converting the taking into a 'temporary' one, is not a sufficient remedy to meet the demands of the Just Compensation Clause." *First English*, 482 U.S. at 319, 107 S.Ct. 2378, 96 L.Ed.2d 250.

Delays in Use; Paper Streets

**{¶ 38}** Respondents claim that relators were not entitled to compensation because they were not prepared to make the required access road improvements for retail use as authorized by the court until March 2001, when they submitted their road improvement plans to Mayfield Heights, and relators did not address a wetlands issue concerning their development of property until November 2000.

**{¶ 39}** The United States Supreme Court emphasized in *First English* that it expressed no opinion on "normal delays in obtaining building permits, changes in zoning ordinances, variances, and the like" in regulatory inverse condemnation cases.  482 U.S. at 321, 107 S.Ct. 2378, 96 L.Ed.2d 250.

**{¶ 40}** Respondents here, however, applied unconstitutional zoning classifications to relators' property for over nine years after relators acquired the property.  Any delays by relators did not contribute to respondents' delay in finally rezoning the property to U-4.  In fact, as established by relators, there was never a substantive wetlands issue.

**{¶ 41}** Respondents further claim that there is no compensable taking because the city owned "paper streets" until the December 2000 consent entry vacating the streets and declaring relators the owners of the property.  The evidence, however, establishes that Mayfield Heights abandoned the paper streets long before the taking of the property here.

**{¶ 42}** The land constituting the paper streets was dedicated to the city in 1927.  Once land is dedicated, it is held in trust for street or alley purposes and reverts to the grantor or those claiming under the grantor when it is abandoned or vacated.  See, *e.g., State ex rel. Bedard v. Lockbourne* (1990), 69 Ohio App.3d 452,

457, 590 N.E.2d 1327; *Chillicothe Bowling Lanes, Inc. v. Kitchen Collection, Inc.* (Aug. 15, 1995), Ross App. No. 94CA2066, unreported, 1995 WL 495959. Nonuse of the property, *i.e.*, ceasing all acts of enjoyment on the property, must occur for at least twenty-one years in order to constitute abandonment. *Nail & Iron Co. v. Furnace Co.* (1889), 46 Ohio St. 544, 22 N.E. 639, paragraph two of the syllabus; *Anderson v. Alger* (May 14, 1999), Hardin App. No. 6-98-10, unreported, 1999 WL 378377. The city never constructed or used the paper streets here.

{¶ 43} In fact, when Mayfield Heights accepted the dedication of an adjacent subdivision in 1959, access to these never-constructed streets from actual streets was blocked. The city's 1959 acceptance of this dedication consequently evinced its intent to abandon the paper streets, and its nonuse of these streets continued for over the requisite twenty-one-year period before the taking here. See *Anderson*, citing *Wyatt v. Ohio Dept. of Transp.* (1993), 87 Ohio App.3d 1, 5, 621 N.E.2d 822, regarding the requirement of an intent to abandon. Therefore, relators owned the property consisting of the "paper streets" at the time the temporary taking occurred because the city had abandoned the property.

*Res Judicata*

**{¶ 44}** Respondents finally argue that *res judicata* bars relators' takings claim because relators could have raised their takings claim in their declaratory judgment action, which was the subject of *Shemo I*. Respondents are correct that *res judicata* generally bars litigation of all claims that either were or *might have been* litigated in a first lawsuit. *State ex rel. Carroll v. Corrigan* (2001), 91 Ohio St.3d 331, 332, 744 N.E.2d 771.

**{¶ 45}** Unlike other judgments, however, and consistent with the persuasive weight of authority, a declaratory judgment is not *res judicata* on an issue or claim not determined thereby even though it was known and existing at the time of the original action. See *Jamestown Village Condo. Owners Assn. v. Market Media Research, Inc.* (1994), 96 Ohio App.3d 678, 685-687, 645 N.E.2d 1265. Thus, a declaratory judgment determines only what it actually decides and does not preclude other claims that might have been advanced. 1 Restatement of the Law 2d, Judgments (1982) 337, Section 33, Comment *c*; *Ketchel v. Bainbridge Twp.* (1992), 79 Ohio App.3d 174, 177-178, 607 N.E.2d 22.

**{¶ 46}** Therefore, relators' failure to raise their takings claim in their previous declaratory judgment action does not bar their takings claim in this mandamus proceeding.

Temporary Taking—Duration and Measure of Damages

**{¶ 47}** Relators request compensation for the period from March 19, 1992, when they filed a declaratory judgment action challenging the existing U-1(1) zoning classification, until August 20, 2001, when the city council enacted a resolution removing the emergency-use restriction for one road providing access to the proposed retail development.

**{¶ 48}** Under the first prong of the *Agins* test, relators established a temporary taking during the time that the U-1(1) and U-2-A zoning classifications were unconstitutionally applied to their property. These single-family residential

classifications were applied to their property on March 19, 1992, the date they claim as the beginning date of the temporary taking. But the zoning classifications had been invalidated and the requested zoning, U-4, was applied by Mayfield Heights to their property in April 2001. Although the Maplewood Road emergency-use restriction was not removed until August 2001, April 2001 is the ending date for the temporary taking because the challenged zoning regulations no longer applied to relators' property. And relators did not establish that they were denied *all* economically viable use for their property under the second prong of the *Agins* test after the rezoning in April 2001.

{¶ 49} For the measure of damages, relators are entitled to the diminution in the value of the use of their property during the period of the temporary taking. See *Norwood v. Sheen* (1933), 126 Ohio St. 482, 494, 186 N.E. 102; *First English*, 482 U.S. at 319, 107 S.Ct. 2378, 96 L.Ed.2d 250.

## Conclusion

{¶ 50} Based on the foregoing, relators have established their entitlement to the requested extraordinary relief in mandamus to compel respondents to commence appropriation proceedings to determine the amount of the city's temporary taking of relators' property. Therefore, we grant the writ.

*Writ granted.*

MOYER, C.J., RESNICK, COOK and LUNDBERG STRATTON, JJ., concur.

F.E. SWEENEY and PFEIFER, JJ., concur but would also award attorney fees.

DOUGLAS, J., concurs in judgment.

_____

*Sheldon Berns* and *Benjamin J. Ockner*, for relators.

*Leonard F. Carr* and *L. Bryan Carr; Calfee, Halter & Griswold, L.L.P.,* and *Phillip J. Campanella*, for respondents.

_____