**STATE of Ohio ex rel. GERHARDT et al.,**

v.

**SPRINGFIELD CITY COMMISSION et al.**

[Cite as *State ex rel. Gerhardt v. Springfield City Comm.*, 190 Ohio App.3d 233, 2010-Ohio-3446.]

Court of Appeals of Ohio,
Second District, Clark County.

No. 2010–CA–27.

Decided July 22, 2010.

234

Gray Price and Bryan Moore, for relators.

Andrew Burkholder, for respondents.

Per Curiam.

{¶ 1} On March 11, 2010, relators, Paul Gerhardt and Ginger Gerhardt, filed a petition for a writ of mandamus. Relators allege that they have suffered physical damage to their persons and property on account of the Springfield–Beckley Municipal Airport's proximity to relators' residence, which is located at 400 Sparrow Road, Springfield, Clark County, Ohio. Specifically, relators assert that respondents, the Springfield City Commission and the city commissioners individually, have failed to mitigate noise pollution and vibrations caused by the testing

of jet engines, despite the construction of a "hush house" in 1986. (A "hush house" is a "building designed to reduce audible noise and physical vibrations that are created by the testing of jet engines.") Thus, relators seek an order from this court compelling respondents to "institute appropriation proceedings in connection with the Respondents' uncompensated taking of the Relators' Property, or portion thereof, in connection with the hush house; to determine the value of the Relators' Property which has been taken; [and] to determine the amount of damages due and owing to the residue of the Relators' Property by way of the continuous operation of the hush house since 2001."

{¶ 2} On April 6, 2010, respondents filed a motion to dismiss the instant petition under Civ.R. 12(B)(6). Therein, respondents first argue that they and the city of Springfield have not taken relators' property, as alleged in the petition. According to respondents, the city of Springfield leases approximately 164.06 acres of its 1,600-acre municipal property known as the Springfield–Beckley Municipal Airport to the United States of America. The lease, which began in 1954 and extends into the present by way of 12 modification agreements, grants the United States exclusive use of the territory. The United States has entered into a license with the Ohio Air National Guard, for use of the territory under the lease. Respondents assert that all facilities constructed on the territory, therefore, are owned by the United States and are occupied and operated by the Ohio Air National Guard.

{¶ 3} One such facility is the hush house subject to this petition. Pursuant to the affidavit of Major Matthew Craig, attached to respondents' motion to dismiss, "[a] hush house is a movable item of equipment large enough for a jet aircraft to be parked inside and in which jet engines are operated during maintenance and testing activities. The hush house is a metal structure approximately two stories in height, occupies approximately 9,270 ft² of area and is placed on a substantial concrete slab. A hush house is intended to reduce the amount of noise, vibrations and fumes released into the environment when engines are operated during maintenance and testing activities." The hush house at issue here was originally constructed in 1986 and was moved to its current location approximately 2,500 feet to the southwest of relators' home in 2002. Because the hush house is an item of equipment owned by the United States and operated by the Ohio Air National Guard, respondents contend that relators cannot show there has been a taking by either respondents or the city of Springfield. Consequently, respondents assert that relators fail to demonstrate that respondents have a clear legal duty to initiate an appropriation action.

{¶ 4} Next, respondents claim that the petition must be dismissed because the city purchased an aviation easement on relators' property in 1983 that releases the city from liability for the precise damages alleged in this action. The

easement provides that "the Grantors, for valuable consideration paid, grant, with general warranty covenants, to The City of Springfield, Ohio * * * an easement and right of way, appurtenant to The Springfield Municipal Airport for the unobstructed passage of all aircraft ('aircraft' being defined for the purpose of this instrument as any contrivance now known or hereafter invented, used or designed for navigation of or flight in the air) by whomsoever owned and operated, * * * together with the right to cause in all air space above the surface of Grantor's property such noise, vibrations, fumes, dust, fuel particles, and all other effects that may be caused by the operation of aircraft landing at, or taking off from, or operating at or on said Springfield Municipal Airport; and Grantors do hereby fully waive, remise, and release any right or cause of action which they may have or which they may have in the future against Grantee, its successors and assigns, due to such noise, vibrations, fumes, dust, fuel particles, and all other effects that may be caused or may have been caused by the operation of aircraft landing at, or taking off from, or operating at or on said Springfield Municipal Airport." In light of the terms of the easement, respondents argue that relators have not shown they have a clear legal right to an appropriation action for a taking arising out of causes for which the easement allegedly releases the city of liability.

{¶ 5} Finally, respondents argue that the Springfield City Commission is not sui juris; thus, it cannot sue or be sued without statutory authority. Insofar as relators have named the Springfield City Commissioners in their individual capacities, respondents claim that mandamus is inappropriate to compel them to commence appropriation proceedings, because adopting legislation to initiate an appropriation action is a discretionary act, and mandamus "cannot be used to control the exercise of administrative or legislative discretion." *State ex rel. Dublin v. Delaware Cty. Bd. of Commrs.* (1991), 62 Ohio St.3d 55, 60, 577 N.E.2d 1088.

{¶ 6} On April 26, 2010, relators filed a memorandum in opposition to respondents' motion to dismiss. Therein, relators argue that the city is indeed responsible for the taking of their property, as the city owns the land upon which the hush house sits.[1] Alternatively, relators claim that if liability for the taking lies with the United States and/or the Ohio Air National Guard, the appropriate action for respondents is to join those parties by way of a motion pursuant to Civ.R. 19, not to move for dismissal.

---

1. In the event that this court determines that the city should be named as a party in the action, relators contemporaneously with their memorandum in opposition filed a "Motion to Make Additional Party a Respondent," pursuant to Civ.R. 20(A).

{¶ 7} Relators further assert that the city has acknowledged its ownership of the property on which the hush house sits and its intention to appropriate relators' property for airport operations by way of a notice of intent to acquire property, pursuant to R.C. 163.04 and 163.041, sent to relators on October 16, 2009. Although an appropriation of the property did not ultimately take place, relators assert that such action evinces the city's intent to appropriate the property for extended use of the airport operations, thereby demonstrating that the city has a clear legal duty to initiate the appropriation proceedings sought in this action.

{¶ 8} Next, relators contend that the 1983 aviation easement described above could not have contemplated the disturbances alleged to have been produced in the hush house, because the easement considers the operation of aircraft only. Relators distinguish the operation of aircraft from the operation of jet engines, the latter being the primary use of the hush house.

{¶ 9} Relators also argue that the aviation easement was granted only to the city, and there has been no assignment of the easement to the United States or the Ohio National Guard. Thus, it is relators' position that the easement does not protect the city from liability once it is determined to have taken relators' property.

{¶ 10} Finally, with regard to the argument that the Springfield City Commission is not sui juris, relators claim that the city vests all its legislative and executive powers with the city commission, including the power to appropriate property—this argument puts form over substance. Furthermore, insofar as the relief requested would be an intrusion upon respondents' discretionary power, as argued in their motion to dismiss, relators provide that they are not alleging an abuse of discretion on the part of the city to determine that appropriation is necessary; instead, relators argue that respondents simply have already taken their property but have not compensated them for it.

{¶ 11} On May 12, 2010, respondents filed a reply brief.

{¶ 12} Upon due consideration of the foregoing, this court finds the April 6, 2010 motion to dismiss well taken.

{¶ 13} Ohio law is clear that "[m]andamus is the appropriate action to compel public authorities to institute appropriation proceedings where an involuntary taking of private property is alleged." *State ex rel. Shemo v. Mayfield Hts.* (2002), 95 Ohio St.3d 59, 63, 765 N.E.2d 345. To be entitled to a writ of mandamus, relators must establish (1) a clear legal right to compel respondents, the Springfield City Commission and the city commissioners individually, to begin appropriation, (2) respondents' corresponding clear legal duty to institute such action, (3) and the lack of an adequate remedy for relators in the ordinary course

of law.  See *State ex rel. Shelly Materials, Inc. v. Clark Cty. Bd. of Commrs.,* 115 Ohio St.3d 337, 2007-Ohio-5022, 875 N.E.2d 59, at ¶ 15.

{¶ 14} The threshold issue in the present matter, as raised by respondents in their motion to dismiss, is whether the Springfield City Commission and the city commissioners individually are indeed the public authorities responsible for the alleged taking of relators' property, and therefore, the proper parties to institute appropriation proceedings.  Respondents argue that the United States, as lessee of the Springfield–Beckley Municipal Airport and owner of the facilities constructed thereon, and/or the Ohio Air National Guard, as occupier and operator of said facilities, are the public authorities liable for the alleged taking.

{¶ 15} In *Griggs v. Allegheny Cty.* (1962), 369 U.S. 84, 82 S.Ct. 531, 7 L.Ed.2d 585, the United States Supreme Court considered a similar question concerning the proper party where it was alleged that appropriation of private property resulted from the take-off and landing of aircraft at an adjacent county airport:

{¶ 16} "It is argued that though there was a 'taking,' someone other than respondent was the taker—the airlines or the C.A.A. acting as an authorized representative of the United States.  We think, however, that respondent, which was the promoter, owner, and lessor of the airport, was in these circumstances the one who took the air easement in the constitutional sense.  Respondent decided, subject to the approval of the C.A.A., where the airport would be built, what runways it would need, their direction and length, and what land and navigation easements would be needed.  The Federal Government takes nothing; it is the local authority which decides to build an airport vel non, and where it is to be located.  We see no difference between its responsibility for the air easements necessary for operation of the airport and its responsibility for the land on which the runways were built.  Nor did the Congress when it designed the legislation for a National Airport Plan.  For, as we have already noted, Congress provided in 49 U.S.C. § 1109, 49 U.S.C.A. § 1109, for the payment to the owners of airports, whose plans were approved by the Administrator, of a share of 'the allowable project costs' including the 'costs of acquiring land or interests therein or easements through or other interests in air space.' § 1112(a)(2)."  Id. at 89.

{¶ 17} The court took note that the respondent owned and maintained the county airport.  The respondent also entered into lease agreements with airlines, giving the airlines the right to take off from and land at the airport.  Id. at 86. The only involvement of the United States, via the Civil Aeronautics Administration ("C.A.A."), was to provide a national plan for the development of public airports and to ensure that the public entity who owned the airport complied with the rules and regulations of the plan.  Id. at 85.  The court concluded that although not in violation of C.A.A. standards, the flights taking off and landing

from the respondent's airport caused such disturbances by their noise and vibrations to the homeowners' property and person that they amounted to a taking for which compensation was necessary. Id. at 86–87. As it was the county that owned the airport, planned for its location, used its facilities and maintained its operations, the court was not persuaded that any other party was responsible for the alleged taking. Id. at 90. But see *Griggs,* 369 U.S. at 90–94, 82 S.Ct. 531, 7 L.Ed.2d 585 (Black, J., dissenting).

{¶ 18} The Supreme Court of Ohio has followed *Griggs* on two occasions to find that a local public authority, i.e., the city of Columbus, was liable for the alleged taking of private property caused by frequent, low-flying airplanes in connection with the operation of the Columbus International Airport. See *State ex rel. Partlow v. Columbus* (1970), 22 Ohio St.2d 1, 51 O.O.2d 1, 257 N.E.2d 395; *State ex rel. Bower v. Columbus* (1971), 27 Ohio St.2d 7, 56 O.O.2d 4, 271 N.E.2d 860. In both cases, the court was not persuaded by the respondents' arguments that the United States, via the Federal Aviation Administration, was the principal actor in the alleged taking where it set the guidelines for national flight operations and the local public entity was merely an agent of the United States. *Partlow,* 22 Ohio St.2d at 2; *Bower,* 27 Ohio St.2d at 8.

{¶ 19} This court finds the role of the United States very different in the present matter. Whereas the local public entities in the foregoing cases owned, maintained, and used their respective airports for commercial purposes, the city of Springfield plays no part in the military operational activity that takes place at the Springfield–Beckley Municipal Airport except to provide and maintain the land. We do not find the city's part sufficient to attach liability for the conduct that takes place thereon. Pursuant to the lease presently in effect, the United States, specifically the United States Air Force and/or the Air National Guard, has exclusive use of the airport territory for military aviation purposes. Operation of the hush house at issue, which is used during testing and performing maintenance on the military jet aircraft, falls within those purposes. This is not a situation where the United States' role is merely supervisory and regulatory.

{¶ 20} In *United States v. Causby* (1946), 328 U.S. 256, 66 S.Ct. 1062, 90 L.Ed. 1206, the Supreme Court found the United States liable for an alleged appropriation of private property, which included a chicken farm, caused by frequent and regular low-flying army and navy aircraft over the respondents' land. Id. at 267. There, like the situation in the present matter, the United States obtained the right to use the municipal airport by way of a lease agreement, concurrent with other users. Id. at 258, 269. The conduct of the United States was alone found attributable to the diminution in the value of respondent's property. Id. at 267.

{¶ 21} In light of the disposition in *Causby,* this court is persuaded by respondents' argument that relators have failed to name the proper party

responsible for the alleged taking in this case. As a result, relators have not demonstrated that they have a clear legal right to compel the Springfield City Commission and the city commissioners individually to begin appropriation proceedings, nor have they demonstrated that respondents have a corresponding clear legal duty to institute such proceedings.

{¶ 22} Furthermore, this court is not persuaded by relators' alternative argument that respondents have a duty to join the United States as a party, under Civ.R. 19. This is not a situation where a party with an interest in the case should be joined to protect said interest or to avoid prejudice to the other parties. Here, we find that respondents should not be named parties at all. The complaint itself has failed to identify the proper party capable of providing the relief sought.

{¶ 23} Accordingly, this court finds that relators have failed to state a claim upon which relief can be granted. Respondents' motion to dismiss is sustained. This matter is hereby dismissed.[2]

Cause dismissed.

DONOVAN, P.J., and FAIN and FROELICH, JJ., concur.

---

**2.** In light of this holding, relators' April 26, 2010 motion to add the city of Springfield as a respondent is overruled.