[Cite as *Wilson v. S. Euclid*, 2016-Ohio-3258.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 103067**

# TENISHA R. WILSON, ET AL.

PLAINTIFFS- APPELLANTS

vs.

# CITY OF SOUTH EUCLID

DEFENDANT-APPELLEE

## JUDGMENT:
REVERSED AND REMANDED

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CV-13-818816

**BEFORE:**   Stewart, J., Keough, P.J., and McCormack, J.

**RELEASED AND JOURNALIZED:**   June 2, 2016

**ATTORNEYS FOR APPELLANTS**

Janay M. Stevens
Nita L. Hanson
Dinsmore & Shohl, L.L.P.
191 W. Nationwide Boulevard, Suite 300
Columbus, OH 43215


**ATTORNEYS FOR APPELLEES**

Michael P. Lograsso
Law Director, City of South Euclid
1349 South Green Road
South Euclid, OH 44121

Anthony J. Coyne
Justin J. Eddy
Mansour Gavin, L.P.A.
North Point Tower, Suite 1400
1001 Lakeside Avenue
Cleveland, OH 44114

MELODY J. STEWART, J.:

{¶1} Plaintiff-appellant Tenisha Wilson's property, in the defendant-appellee city of South Euclid, abuts a "paper street"— a street that was platted but never physically constructed. After years of being held responsible for the upkeep and maintenance of the street, Wilson and her husband, plaintiff-appellant Denman Gordon, asked the city to vacate the street to them. The city refused, so Wilson and Gordon filed this action.[1] Wilson seeks, among other things, a declaration that the city abandoned the street and that the street should be vacated to her, along with compensatory damages representing the amount of money she expended over time in maintaining the street. The court granted the city's motion for summary judgment, finding that the undisputed evidence showed that the city had not abandoned the public use of the road for the requisite 21-year period, nor had Wilson established that she exerted uninterrupted ownership and control over the property for 21 years. Wilson appeals, assigning as error that the trial court erred in granting summary judgment to the city on her claims of abandonment, vacation, and disparate treatment.

---

[1]Hereinafter we will address Wilson's and Gordon's claims collectively by reference to Wilson as the named property owner.

{¶2} The street in question was platted as "Laurens Avenue," but never constructed. As originally platted, Laurens Avenue was meant to connect Newberry Avenue and Clinton Avenue at their southern terminus. Newberry Avenue and Clinton Avenue originate at South Green Road and run southerly and parallel to each other before dead-ending into Laurens Avenue. A fence runs along the southern boundary of Laurens Avenue.

{¶3} Wilson lives at the southwest corner of Newberry Avenue where it dead-ends into Laurens. The deed to the property contains the following land description:

> [B]eing 29.87 feet from front of the Westerly side of Newberry Avenue, 31.55 feet on the curved turnout between the Westerly side of Newberry Avenue and the Northerly side of Laurens Avenue and extending back 160 feet deep on the Northerly line, 139.87 feet deep on the Southerly line, which is also the Northerly side of Laurens Avenue and having a rear line of 50 feet, as appears by said plat, to be the same more or less, but subject to all legal highways.

{¶4} As would be expected of a "paper street," there are no street signs indicating the presence of Laurens Avenue. In its present condition, the part of Laurens Avenue near Newberry Avenue consists of an asphalt roadway or driveway that connects to Wilson's driveway and garage (the garage is located behind the house). Where the roadway ends, the remainder of the paper street is green space — containing what even the city characterizes as "a wooded area." Motion for Summary Judgment at 4. Photographs suggest that there is a path through the wooded area, but that the path would be too narrow for motor vehicle access.

{¶5} The former owner of Wilson's house testified in deposition that when he bought the house in 1982, Laurens Avenue existed as an "uneven road" consisting of a mixture of dirt and gravel that led back to the garage. He claimed that at the time he bought the house, he was told that the strip of land was his property and he used it as a driveway. In 1983, he discovered that the land belonged to the city. The former owner said that the city's street department ordered him to pave the road, even over his protest that the strip of land belonged to the city and that the city should be responsible for the cost of paving it. According to the former owner, a street department employee said "no, you pave it or I will cite you." The city concedes that the "driveway is in part located on Laurens Avenue." Motion for Summary Judgment, at 8.

{¶6} In addition to being told to pave the driveway, the former owner testified at deposition that he received a written citation from the city ordering him to remove tree limbs that had fallen on Laurens. The former owner said that he went to the city to complain about being forced to maintain the avenue, but was told that "it was private property and [the city] couldn't drive the trucks up there."

{¶7} Among other improvements he made to the property, including landscaping parts of Laurens, the former owner installed an in-ground sprinkler system. Two of the sprinkler heads were installed on both sides of the driveway, meaning that at least some of the sprinkler heads were on part of the land comprising the avenue. The former owner testified that at no time did the city mow the grass, remove dead leaves, or plow snow from the street. The maintenance of Laurens was solely his responsibility. And when the former owner listed the house for sale, a city point of sale inspection ordered him to make repairs to the driveway. The former owner said that when he sold the house in 1991, he told the buyers that the land belonged to the city.

{¶8} Wilson bought the house in 1996. She admitted that at the time she purchased the house, she had no paperwork indicating that she owned the land comprising Laurens Avenue. Nevertheless, as with the prior owner, the city cited Wilson with maintenance violations of the driveway, causing her to believe that she owned the land. Those citations were issued in October 2001, July 2002, and April 2008. In January 2010, the city gave Wilson notice of a maintenance code violation with orders to make repairs to a part of Laurens damaged by tire tracks caused by vehicles from the city of Cleveland Water Department used to make repairs to a water main.

{¶9} In 2008, Wilson became aware that the city was claiming ownership of Laurens. She also became aware that the property owner across the street from her (that owner occupied sublot 152; Wilson occupied sublot 151) had a portion of Laurens vacated to him. Wilson contacted the city's building inspector and the city's building commissioner to inquire about having the portion of the avenue abutting her property vacated to her. The building inspector told Wilson to petition the city's law director.

{¶10} In August 2010, Wilson made a formal request to the city's law director to vacate a portion of Laurens Avenue to her. She received no response. Wilson again submitted a request for vacation in writing to the city law director in July 2013. The law director did not formally respond to Wilson's request. However, in a meeting with Wilson, the law director, along with the city engineer and the city service director, agreed that the city would place "no trespassing" signs in the area in response to Wilson's immediate complaints about persons loitering on Laurens. Those signs were removed just days later after a city resident complained.

{¶11} Wilson then sought assistance from her councilwoman. The councilwoman introduced a resolution to have Laurens Avenue vacated to Wilson. The same resident who objected to the "no trespassing" signs objected to the legislation, and the ordinance never made it out of committee. Wilson then filed this action.

**{¶12}** A landowner like Wilson has several ways of seeking a vacation of a street. There are two statutory methods: by petition to the legislative authority under R.C. 723.04 or by petition to the court of common pleas under R.C. 723.09. *Bayer v. N. Coll. Hill*, 31 Ohio App.3d 208, 210, 510 N.E.2d 400 (1st Dist.1986). In addition, a landowner seeking vacation of a street can attempt to show that the street has been abandoned.[2]

**{¶13}** As previously mentioned, Wilson did petition the city for a vacation of Laurens, but the legislative response to that effort was that the proposed legislation did not make it out of committee. That petition is not a part of this action.

**{¶14}** Wilson petitioned the common pleas court to order vacation of Laurens under R.C. 723.09. That section states:

---

[2] Wilson's complaint also raised a claim of adverse possession, but that claim failed below because of the general rule that "adverse possession cannot be applied against the state and its political subdivisions." *1540 Columbus Corp. v. Cuyahoga Cty.*, 68 Ohio App.3d 713, 717, 589 N.E.2d 467 (8th Dist.1990). The reason for this rule is that "the public, for whom the municipality holds the property in trust, should not suffer for a government's negligence or inattention no matter what the land's purpose." *Nusekabel v. Cincinnati Pub. School Emps. Credit Union*, 125 Ohio App.3d 427, 436, 708 N.E.2d 1015 (1st Dist.1997). Thus, "[n]o adverse occupation and user of land belonging to the State of Ohio, however long continued, can divest the title of the State in and to such lands." *Haynes v. Jones*, 91 Ohio St. 197, 110 N.E. 469 (1915), paragraph three of the syllabus. A statutory exception to this general rule exists under R.C. 2305.05, for a street or highway that has not been open for public use and an adjoining landowner fences in all or a portion of the street and remains in open, uninterrupted use of the enclosed area for the requisite 21-year period. *Barrett v. Wilmington*, 12th Dist. Clinton No. CA2015-02-006, 2016-Ohio-2776, ¶ 12. Wilson did not fence off any portion of Laurens Avenue and, in fact, no longer makes any claim of adverse possession.

The court of common pleas may, upon petition filed in such court by any person owning a lot in a municipal corporation, for the establishment or vacation of a street or alley in the immediate vicinity of such lot, upon hearing, and upon being satisfied that it will conduce to the general interests of such municipal corporation, declare such street or alley established or vacated, but this method shall be in addition to those prescribed in sections 723.04 to 723.08, inclusive, and section 723.02 of the Revised Code.

{¶15} R.C. 723.09 envisions an adversarial proceeding on a petition to order vacation. *Bretell v. Steubenville*, 7th Dist. Jefferson No. 89-J-44, 1990 Ohio App. LEXIS 4666 (Oct. 25, 1990). To hold otherwise would render the requirement for a "hearing" a nullity. For this reason, R.C. 723.09 claims are not ordinarily amenable to disposition by summary judgment. The parties could, of course, stipulate to the absence of any genuine issue of material fact and submit the matter on briefs. But that did not occur here. And in her brief in opposition to the city's motion for summary judgment, Wilson did not acknowledge the absence of any genuine issue of material fact. The court should not have granted summary judgment on Wilson's R.C. 723.09 petition.

{¶16} Even if the court could dispose of Wilson's R.C. 723.09 petition by summary judgment, it erred by finding that the city met its initial burden of showing the absence of any genuine issue of material fact.

{¶17} The city's motion for summary judgment claimed entitlement to judgment as a matter of law on Wilson's petition, arguing that she provided nothing but unsupported conclusions that vacation of Laurens Avenue would be conducive to the general interests of the city — it argued that Wilson would "presumably" assert that vacation of Laurens would save the city money, but that she offered no direct evidence to support that assertion. The court agreed with the city, stating that "there remain no genuine issues of fact that granting plaintiffs request for a vacation of Laurens Ave. would not conduce to the general interests of the city of South Euclid."

{¶18} Civ.R. 56(C) allows the court to grant summary judgment when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. In *Dresher v. Burt*, 75 Ohio St.3d 280, 662 N.E.2d 264 (1996), the Supreme Court emphasized that the party seeking summary judgment bears the initial burden of proving the absence of any genuine issue of material fact, even with respect to issues that the non-moving party would have the burden of proving at trial. *Id.* at 295.

**{¶19}** Because R.C. 723.09 permits vacation of a city street upon a showing that it would be conducive to the city's interests, the city, as the party opposing Wilson's request for vacation, had the burden of showing in its motion for summary judgment that the vacation of Laurens Avenue would not be conducive to the city's general interests. But rather than make an affirmative argument that vacation would not be conducive to the city's interests, the city argued only that Wilson could not prove her "bare assertion" that vacation would be conducive to the city's general interests. This was insufficient for purposes of Civ.R. 56(C) — "a moving party cannot discharge its burden under Civ.R. 56 simply by making conclusory assertions that the non-moving party has no evidence to prove its case." *Franks v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. Franklin No. 12AP-442, 2013-Ohio-1519, ¶ 5.

**{¶20}** The only evidence even remotely touching on the issue of whether vacation would not be conducive to its best interests was the city's statement that "the general public clearly uses Laurens Ave. as a public way." What the city and the court below called the "general public," Wilson characterized as "strange people walking through." In the letter that Wilson sent to the city's law director to request vacation of Laurens, Wilson explained that she had seen people walking through between the hours of 12 a.m. to 3 a.m. In her deposition testimony, she said that these people left behind "debris" that consisted of empty beer cans. We assume that the use of Laurens Avenue for late-night drinking is not an interest the city wishes to protect.

{¶21} In fact, the city could identify only one member of the public who used Laurens — the same citizen who objected to the "no trespassing" signs placed on the avenue. The citizen wrote the city a letter in which she represented that she was a city resident "in the area of Laurens Avenue" and was attempting to access Laurens to reach Newberry Avenue when she discovered the no trespassing signs. The citizen's letter gives no indication of how often she used, or uses, Laurens. For evidentiary purposes, the court could assume no more than that the citizen attempted to use Laurens a single time. This is not enough to constitute use by the general public, and certainly not enough to show that vacation of Laurens would not be conducive to the city's general interest.

{¶22} The other means Wilson had to seek vacation of Laurens Avenue was under a theory of abandonment.

**{¶23}** When a developer creates a plat of a subdivision, a city's recording of the plat constitutes a conveyance that vests in the municipal corporation "the fee of the parcel of land designated or intended for streets, alleys, ways, commons, or other public uses, to be held in the corporate name in trust to and for the uses and purposes set forth in the instrument." R.C. 711.07. Nevertheless, streets shown on a plat may not be constructed, so they exist merely on "paper" — hence the term "paper street." *Ambrose v. Kuhn*, 11 Ohio Dec.Rep. 338 (C.P.1891); *Shapiro v. Burton*, 23 Mass.App.Ct. 327, 502 N.E.2d 545 (1987), fn. 3. When the land involved is a paper street, once dedicated as such, "it is held in trust for street or alley purposes and reverts to the grantor or those claiming under the grantor when it is abandoned or vacated." *State ex rel. Shemo v. Mayfield Hts.*, 95 Ohio St.3d 59, 68, 765 N.E.2d 345 (2002).

**{¶24}** A municipality can abandon land. In *G&M Smith Family L.P. v. Mingo Junction*, *Ohio*, 7th Dist. Jefferson No. 14 JE 11, 2014-Ohio-5857, the court noted:

> There are essentially two principal elements to prove abandonment of a street. The first is 21 years of nonuse. *Shemo* at 68. Nonuse means ceasing all acts of enjoyment on the property. *Id*. The second is an intent to abandon on the part of the municipality. *Wyatt v. Ohio Dept. of Transp.*, 87 Ohio App.3d 1, 3-4, 621 N.E.2d 822 (11th Dist.1993).

*Id*. at ¶ 31.

**{¶25}** Abandonment is difficult to prove. For example, in *Nail & Iron Co. v. Furnace Co.*, 46 Ohio St. 544, 22 N.E. 639 (1889), the Supreme Court held that:

Under a claim of abandonment of a road in a municipal corporation, proof that no work had been done on the road by the public authorities for fifteen years; that the road was at times in bad condition and impassable; that it passed over a steep hill; was difficult of use; that a new road had been established in the vicinity intended to take its place; that for eleven years before suit was brought travel had been substantially diverted to the new road, and that portions of the old road had been fenced in, are not sufficient to show abandonment by the public.

*Id*. at paragraph one of the syllabus.

{¶26} Unlike an R.C. 723.09 petition, a claim that a city has abandoned a paper street is not subject to being disposed of only by a hearing, so Wilson's abandonment claim was amenable to disposition by way of summary judgment. The court held that Wilson failed to show that all public use and enjoyment of the property had ceased for 21 years.

{¶27} The prior owner of Wilson's house lived there from 1982 to 1991. He testified at deposition that at "no time" did he ever see city workers maintaining the property and that he alone maintained Laurens. And when ordered by the city to pave the roadway, the former owner protested that Laurens Avenue was a city street and that the city should bear the cost of paving it. He was told to pave it or be cited. Reasonable minds could find that the city's insistence that the prior owner maintain the property under threat of being cited showed an abandonment.

**{¶28}** Wilson purchased the house in May 1996 from the Department of Housing and Urban Development and continues to reside at the property. Like the former owner, she was told to make substantial repairs to the Laurens Avenue portion of the property, even after complaining that it was not her responsibility. This complaint was made after the city of Cleveland Water Department apparently damaged portions of the roadway and Wilson's lawn when repairing a water main break. Wilson testified that the city of Cleveland failed to return to repair the damage as promised. Nevertheless, the city cited Wilson for the condition of the property, specifically ordering her to make repairs to the same roadway/driveway that it now claims is city property. Wilson offered evidence that the city three times cited her for failing to maintain the driveway. She also testified in deposition that she maintained Laurens and offered invoices from a landscaping company as proof. Viewing the evidence most favorably to Wilson, we conclude that reasonable minds could disagree on whether the evidence showed that the city had abandoned Laurens Avenue.

{¶29} The city offered some evidence to support its position that it did not abandon the avenue, but that evidence tended to conflict. For example, the previous owner of Wilson's house had placed railroad ties and landscaping on Laurens in an attempt to block access from Clinton Avenue, but had been told by city officials to remove them. That order could obviously be viewed as an assertion of the city's control over Laurens, but the spirit of that order conflicted with the city's demand that the prior owner install, at his own expense, a driveway on what the city claims is a public street. In fact, reasonable minds could find the city's position perplexing: it is difficult to reconcile the city's claim of ownership of Laurens Avenue with undisputed evidence that it has repeatedly placed the onus and cost of maintaining the purported public street on private property owners whose land abuts it, even to the point of threatening criminal prosecution for those who did not comply with its maintenance citations.

{¶30} As another example of the conflict in the city's evidence, in 2013, it agreed to place "no trespassing" signs on Laurens. The act of placing "no trespassing" signs was inconsistent with the city's position that the avenue was a public street — in other words, how can the avenue be used for public access when the public was prohibited from using it. What is more, the city offered no evidence to show that the "no trespassing" signs clearly stated that they referred to city property. Reasonable minds could view the city's act of placing the "no trespassing" signs as a signal to the public that the land comprising Laurens Avenue was private property belonging to the adjoining homeowners.

**{¶31}** The city offered records from its maintenance department to show that it had performed maintenance work at the "Newberry dead end" from at least 2004, but there was no evidence to show exactly where the maintenance had been performed. None of the city's service records refer expressly to Laurens Avenue; they referred only to the "Newbury [sic] dead end." The reference to a "dead end" might have referred only to the terminus of Newberry Avenue, a part of the street that would plainly be the city's responsibility to maintain (photographs show that Newberry Avenue dead-ends into a fence where leaves and other debris accumulate). The city's service director had no firsthand knowledge of what the maintenance on the Newberry dead-end entailed. He testified at deposition that he sometimes plowed snow on the Newberry Avenue dead-end, but said that he did not actually plow Laurens Avenue. With the absence of any specific evidence to show that any maintenance had been done on Laurens, Wilson is entitled to an inference that the city only maintained the Newberry Avenue part of the dead-end.

**{¶32}** The remaining question is whether Wilson offered evidence from which reasonable minds could find the requisite 21-year period of abandonment. There is a gap in time to show 21 years of continuous abandonment of Laurens: the former owner lived at the Newberry address for nine years (1982-1991) and at the time Wilson filed her complaint in December 2013, she had lived at the Newberry address since 1996, or 17 years. The gap occurred between 1991 and 1996, when the house sat vacant in foreclosure.[3]

_____

[3] In its motion for summary judgment, the city maintained that HUD acquired the property

{¶33} Taken individually, the ownership by either homeowner could not prove continuous abandonment; however, Wilson could tack time to prove a continuous abandonment. Although we have noted that city property is not subject to claims of adverse possession, the law relating to tacking in the context of adverse possession is instructive on claims that a city abandoned a street. In *Zipf v. Dalgarn*, 114 Ohio St. 291, 151 N.E. 174 (1926), the Supreme Court stated:

> "Successive adverse users by different persons may be tacked in order to make up the prescriptive period, provided there is privity or contractual connection between them, and there is no interval between the successive possessions during which the use was not adverse. Thus the term of enjoyment requisite for a prescription is deemed to be uninterrupted when it is continued from ancestor to heir, and from seller to buyer."

*Id*. at 296, quoting 1, *Thompson on Real Property*, Section 404.

{¶34} Although Wilson had no evidence to show whether the city had abandoned Laurens during the five-year gap, the city failed to offer any evidence to show that it exercised dominion and control over the avenue during that time period. As the party opposing the motion for summary judgment, Wilson is entitled to the inference that the city did nothing to maintain Laurens during that five-year period because that inference is consistent with the evidence that the city did nothing to maintain the avenue in the many years both before and after the five-year vacancy.

---

from the former owner via foreclosure in 1991. Motion for Summary Judgment at 6. This assertion was in conflict with the prior owner's deposition testimony that he sold the property to a husband and wife. Campbell Dep. at 42.

**{¶35}** It follows that reasonable minds could differ on whether the city abandoned Laurens Avenue for the requisite 21-year period. The court erred by granting summary judgment on Wilson's abandonment claim.

**{¶36}** Wilson's final argument is the court erred by granting summary judgment on her disparate treatment claim. The substance of that claim was that in 1961, the city vacated a portion of Laurens Avenue to the owner of sublot 152, a property opposite Wilson's on Newberry Avenue, and the city's refusal to grant her the same consideration on her request for vacation was unreasonable and arbitrary. She argues that the city all but ignored her request for vacation, in contravention to the other, similarly situated resident of Newberry Avenue whose request for vacation was granted.

**{¶37}** The court granted summary judgment because it found no evidence to show that Wilson had been treated differently on account of her race. In fact, Wilson's disparate treatment claim is premised on the "class-of-one" theory — that she had been intentionally treated differently from others who were similarly situated and that there was no rational basis for the difference in treatment.

**{¶38}** The Equal Protection Clause of the Fourteenth Amendment to the United States Constitution states that "[n]o state shall deny to any person within its jurisdiction the equal protection of the law." This clause has been construed to require that "that individuals be treated in a manner similar to others in like circumstances." *McCrone v. Bank One Corp.*, 107 Ohio St.3d 272, 2005-Ohio-6505, 839 N.E.2d 1, ¶ 6. Ordinarily, an equal protection claim requires a person to show intentional discrimination because of that person's membership in a particular class. However, in *Willowbrook v. Olech*, 528 U.S. 562, 120 S.Ct. 1073, 145 L.Ed.2d 1060 (2000), the United States Supreme Court held that

> "the purpose of the equal protection clause of the Fourteenth Amendment is to secure every person within the State's jurisdiction against intentional and arbitrary discrimination[,]" so all that is needed to involve the Equal Protection Clause is that plaintiff allege arbitrary treatment, as measured against others similarly situated.

*Id*. at 564, quoting *Sioux City Bridge Co. v. Dakota Cty.*, 260 U.S. 441, 445, 43 S.Ct. 190, 67 L.Ed. 340 (1923). To prove a "class of one" claim, Wilson must show both that she has been "intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Id*.

**{¶39}** Wilson did not allege race as a basis for her disparate treatment (the amended complaint fails to even specify her race), nor was her race a necessary element of her class-of-one claim for relief. To be fair, Wilson's brief in opposition to the city's motion for summary judgment mentions that the owners of sublot 152 were Caucasian and that she is African-American, and Wilson also makes an argument in her appellate brief that mentions race. However, the substance of both Wilson's amended complaint and her opposition to the motion for summary judgment makes clear that the disparate treatment claim is premised on the city refusing to vacate the portion of Laurens Avenue abutting her property when it previously granted a similar request to the owners of the lot directly across the street from her. Wilson's mention of her race has no bearing on the substance of her disparate treatment claim. The court erroneously relied on race as the basis for the disparate treatment claim for relief. Because the court has yet to consider the validity of the disparate treatment claim as pleaded, we reverse the summary judgment on this claim also.

**{¶40}** Judgment reversed and remanded.

It is ordered that appellants recover of said appellee costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
MELODY J. STEWART, JUDGE

KATHLEEN ANN KEOUGH, P.J., and
TIM McCORMACK, J., CONCUR