THE STATE EX REL. DUNCAN, APPELLANT, *v.* VILLAGE
OF MIDDLEFIELD ET AL., APPELLEES.

[Cite as *State ex rel. Duncan v. Middlefield,*
120 Ohio St.3d 313, 2008-Ohio-6200.]

(No. 2008–0877—Submitted September 16, 2008—Decided December 4, 2008.)

———————

**Per Curiam.**

{¶ 1} This is an appeal from a judgment denying a writ of mandamus to compel a village, village council members, and village planning and zoning commission members to commence an appropriation proceeding to determine the amount of compensation to be awarded for an alleged taking of property. Because appellant has not established a compensable taking, we affirm the judgment of the court of appeals.

{¶ 2} Appellant, Richard A. Duncan, owns real property in appellee village of Middlefield, Ohio. The property is zoned for general commercial uses, including Duncan's planned use of the property as a tavern and pool hall. In July 2001, Duncan applied for a zoning permit for the property. Duncan was initially

referred to the village board of zoning appeals, which granted him variances following an October 2001 hearing.

## Site–Plan Review and Issuance of Zoning Permit

{¶ 3} In November 2001, appellee Middlefield Planning and Zoning Commission considered a preliminary site plan submitted by Duncan for the zoning permit and noted that the village engineer had a list of 20 items that needed to be addressed. After Duncan's engineer submitted another site plan, the village engineer detailed over 150 items that were missing from the plan. Over the next several months, Duncan's engineer submitted revised site plans, and the village engineer kept indicating various items that needed revision. Duncan hired a new engineer when his original engineer quit. Duncan admitted that aside from matters concerning storm-water drainage and a variance, he and his original engineer did not dispute the presence of the deficiencies specified by the village engineer in the submitted site plans.

{¶ 4} Following a meeting between Duncan's new engineer and the village engineer in June 2002, the village engineer specified only four items needed for approval of the site plan. On June 27, 2002, the village approved a revised site plan and issued a zoning permit for the tavern and pool hall on Duncan's property. Duncan was not treated differently from anyone else during the site-plan review process.

## Construction Delays and Extensions of Time

{¶ 5} Under the applicable village ordinance, Duncan had to complete the proposed construction within two and one-half years from the date that the zoning certificate was issued. Codified Ordinances of Middlefield 1140.10(a) ("If the construction described in any Zoning Certificate has not begun within one year from the date of issuance thereof, or has not been completed within two and one-half years from the date of issuance thereof, said certificate shall expire and no Occupancy Permit for that project shall be issued thereafter"). Duncan's certificate was set to expire on December 27, 2004.

{¶ 6} At the planning and zoning commission's December 23, 2004 meeting, Duncan requested a nine-month extension of time to complete the construction. Duncan had not yet started any of the site work. The commission tabled the matter until its January 27, 2005 meeting, when it granted Duncan an extension until July 1, 2005, to finish the work. Duncan did not complete the work by July 1, 2005, and at its June 23, 2005 meeting, the commission granted Duncan an extension until August 1, 2005, to complete the project. Duncan sought another extension at the commission's July 28, 2005 meeting, and the commission granted him an additional 30 days with no further extensions.

### Expiration of Zoning Permit, Reapplication, and Issuance of Permits

{¶ 7} On August 24, 2005, the village provided to Duncan a list of 13 items that still had to be completed by the end of August for him to obtain an occupancy permit. At a commission meeting the next day, Duncan requested an additional extension to complete the work. He submitted no evidence or argument in support of his request. The village zoning inspector indicated that Duncan could not complete the required work by the end of August 2005. The commission denied the extension request, and the law director advised Duncan that he could reapply for a new zoning certificate by submitting a new application. Duncan was further informed that he could anticipate only those changes required by new zoning regulations concerning storm water. He was told that approval of a new site plan and zoning certificate should move forward relatively quickly.

{¶ 8} On August 29, 2005, a village representative met with Ronyak Brothers Paving, a company that Duncan had hired to do much of the site work. According to Duncan, although he was unable to hear the conversation between the village representative and the Ronyak employee, the Ronyak employee later told Duncan that the village would throw anyone off the site who tried to complete the work.

{¶ 9} Duncan had attributed any delays in completing the construction of the project before August 29, 2005, to Ronyak and admitted that the village had been "very cooperative" until that date. On August 30, heavy rains from Hurricane Katrina affected the work site so that it was doubtful that the work could have been completed by the end of August. In fact, even when Ronyak came back to the site in September and October 2005 to complete the work, it failed to do so and had to return in May 2006 to complete a required retention pond.

{¶ 10} Because Duncan did not receive an extension of time and failed to complete the project within the prescribed time, his zoning certificate expired at the end of August 2005. More than four months later, in January 2006, Duncan reapplied for a zoning permit. In March 2006, the village zoning inspector issued a zoning permit to construct the tavern and pool hall on the property.

{¶ 11} In April 2006, Duncan changed a pipe from the retention pond to a nearby lake to comply with the village's new storm-water regulations. On June 8, 2006, the village zoning inspector issued Duncan an occupancy permit for the property to be used as a tavern and pool hall. He began operating his tavern and pool hall within two days. Duncan's business lost money in 2006, and he expected that it would also lose money in 2007.

### Court of Appeals Case

{¶ 12} In September 2005, after his first zoning permit had expired and before he applied for a new zoning permit, Duncan filed a complaint in the Court of

Appeals for Lake County against Middlefield, the village council and its members, the village planning and zoning commission and its members, and Ronyak. Duncan sought, among other things, a writ of mandamus to compel the named respondents to commence appropriation proceedings. The court of appeals dismissed the council, the commission, and Ronyak. It also dismissed all claims other than Duncan's mandamus claim.

{¶ 13} Appellees, Middlefield and the members of the council and the commission, subsequently filed a motion for summary judgment on Duncan's mandamus claim. Duncan submitted a brief in opposition with two affidavits. In one of his affidavits, Duncan set forth 12 events that he claimed resulted in the village's temporarily taking his property because of unnecessary delays in the process to obtain the zoning and occupancy permits.

{¶ 14} On April 21, 2008, the court of appeals granted appellees' motion for summary judgment and denied the writ. The court of appeals determined that Duncan "cannot demonstrate that the land in question was subject to a regulatory taking which would entitle[ ] him to just compensation under the Federal and Ohio Constitutions."

{¶ 15} This cause is now before the court on Duncan's appeal as of right.

### Mandamus to Compel Appropriation

{¶ 16} "The United States and Ohio Constitutions guarantee that private property shall not be taken for public use without just compensation." *State ex rel. Shemo v. Mayfield Hts.* (2002), 95 Ohio St.3d 59, 63, 765 N.E.2d 345, judgment modified in part on other grounds, 96 Ohio St.3d 379, 2002-Ohio-4905, 775 N.E.2d 493; Fifth and Fourteenth Amendments to the United States Constitution; Section 19, Article I, Ohio Constitution. "Mandamus is the appropriate action to compel public authorities to institute appropriation proceedings where an involuntary taking of private property is alleged." *Shemo*, 95 Ohio St.3d at 63, 765 N.E.2d 345.

### Partial Regulatory Taking

{¶ 17} In his mandamus claim, Duncan asserts a partial or temporary regulatory taking resulting from the delay caused by the village in approving his zoning and occupancy permits for the tavern and pool hall. Courts apply the test set forth by the United States Supreme Court in *Penn Cent. Transp. Co. v. New York City* (1978), 438 U.S. 104, 98 S.Ct. 2646, 57 L.Ed.2d 631, to claimed partial regulatory takings. See, e.g., *State ex rel. Gilmour Realty, Inc. v. Mayfield Hts.*, 119 Ohio St.3d 11, 2008-Ohio-3181, 891 N.E.2d 320, ¶ 21.

{¶ 18} "*Penn Cent.* recognizes an ad hoc, factual inquiry that requires the examination of the following three factors to determine whether a regulatory

taking occurred in cases in which there is no physical invasion and the regulation deprives the property of less than 100 percent of its economically viable use: (1) the economic impact of the regulation on the claimant, (2) the extent to which the regulation has interfered with distinct investment-backed expectations, and (3) the character of the governmental action." *State ex rel. Shelly Materials, Inc. v. Clark Cty. Bd. of Commrs.*, 115 Ohio St.3d 337, 2007-Ohio-5022, 875 N.E.2d 59, ¶ 19.

{¶ 19} "In the context of regulatory delay, the *Penn Central* inquiry is whether the delay ever became unreasonable. * * * Until regulatory delay becomes unreasonable, there is no taking." *Byrd v. Hartsville* (2005), 365 S.C. 650, 660, 620 S.E.2d 76. Normal delays in obtaining building permits, changes in zoning ordinances, variances, and similar land-use devices are considered permissible exercises of police power; a "rule that required compensation for every delay in the use of property would render routine government processes prohibitively expensive or encourage hasty decisionmaking." *Tahoe–Sierra Preservation Council, Inc. v. Tahoe Regional Planning Agency* (2002), 535 U.S. 302, 335, 122 S.Ct. 1465, 152 L.Ed.2d 517.

{¶ 20} In assessing Duncan's claim of a taking based on an unreasonable delay by the village in issuing zoning and occupancy permits for his tavern and pool hall, we must weigh all relevant factors under the *Penn Cent.* test, one of which is the length of any delay. Id., 535 U.S. at 335–338, 122 S.Ct. 1465, 152 L.Ed.2d 517; see generally *Hanford v. United States* (2004), 63 Fed.Cl. 111, 121 ("a 147–day delay is insufficient as a matter of law to constitute a temporary taking"); *Appolo Fuels, Inc. v. United States* (Fed.Cir.2004), 381 F.3d 1338, 1351 ("Delay in the regulatory process cannot give rise to takings liability unless the delay is extraordinary"). Other factors include bad faith by the governmental entity and whether the delay was attributable to the landowner. See *Wild Rice River Estates, Inc. v. Fargo*, 2005 ND 193, 705 N.W.2d 850, ¶ 26 ("An extraordinary delay in governmental decisionmaking coupled with bad faith on the part of the governmental body may result in a compensable taking of property"); *Wyatt v. United States* (Fed.Cir.2001), 271 F.3d 1090, 1098 ("we must recognize that delay in the permitting process may be attributable to the applicant as well as the government").

{¶ 21} Duncan cites two periods of alleged delay to support his claim of a temporary regulatory taking: (1) six months from when he submitted his first site plan to the commission in late 2001 until the June 2002 date that the village issued him his first zoning permit and (2) nine months from when his first zoning permit expired in August 2005 until the village issued him an occupancy permit in June 2006.

{¶ 22} Regarding the first six months, the delay was not extraordinary. Despite Duncan's claims of bad faith and retaliatory acts by the village, he conceded in deposition testimony that he was not treated differently from anyone else during the process of approving the site plan and that he had no facts supporting his allegation that the village had retaliated against him. Even if we assume the veracity of Duncan's assertion that the village's storm-water drainage requirement was unreasonable, he admitted that his plans included other deficiencies specified by the village engineer that he did not dispute. Therefore, any delay was attributable to Duncan and his engineers' inability to submit compliant site plans for the proposed construction.

{¶ 23} For the second period of about nine months, the delay was also not extraordinary. The village had no duty under Section 1140.10(a) of its Codified Ordinances to grant Duncan any extensions after he failed to complete his proposed construction within two and one-half years of the June 2002 issuance of the first zoning permit. Duncan's claim that he could have finished all of the required construction by the end of August 2005 lacks merit because the evidence was uncontroverted that Ronyak did not even complete the project correctly after it returned in the fall of 2005, which necessitated its return to complete the work in May 2006. Moreover, for at least four of the nine months, Duncan failed to reapply for the zoning permit. Finally, Duncan's claim that the village had ordered Ronyak off the work site on August 29, 2005, was supported by hearsay rather than admissible evidence. See *State ex rel. Miller v. Cuyahoga Cty. Bd. of Elections*, 103 Ohio St.3d 477, 2004-Ohio-5532, 817 N.E.2d 1, ¶ 15 (court need not consider hearsay in resolving summary judgment motions).

{¶ 24} Because the delay in issuing the zoning and occupancy permits was attributable to the actions of Duncan and his contractors rather than the actions of the village, the delay was not unreasonable. In addition, any delay did not have an adverse economic effect on Duncan. In fact, he testified that the value of his property has increased by more than the cost of his improvements. Nor has any purported delay interfered with his distinct investment-backed expectations. Although he claims lost profits from not being able to open his business sooner, he conceded in a deposition that his business actually lost money in 2006 and that he expected to lose money in 2007.

{¶ 25} Therefore, the court of appeals did not err in concluding that Duncan could not establish a compensable temporary regulatory taking based on a delay in the permitting process.

### Sanction for Discovery Violation

{¶ 26} Following a hearing before a magistrate, the court of appeals adopted the magistrate's recommendation and granted appellees' motion for sanctions based on Duncan's misconduct during discovery. During a deposition, Duncan

had brought documents with him to refresh his recollection in responding to questions. When appellees' counsel asked to review the documents Duncan was using to refresh his recollection, some of which included Duncan's handwritten notations, Duncan refused. After appellees' lead counsel left the deposition room to call the court of appeals to resolve the dispute, Duncan had erased some of his notes from at least one of the documents. The court of appeals ordered Duncan to pay $300.

{¶ 27} Duncan asserts that the court of appeals erred in imposing the discovery sanction. Courts have broad discretion over discovery matters, including motions for sanctions. *State ex rel. Citizens for Open, Responsive & Accountable Govt. v. Register,* 116 Ohio St.3d 88, 2007-Ohio-5542, 876 N.E.2d 913, ¶ 18. "A reviewing court shall review these rulings only for an abuse of discretion." *Nakoff v. Fairview Gen. Hosp.* (1996), 75 Ohio St.3d 254, 662 N.E.2d 1, syllabus. "An abuse of discretion occurs when a decision is unreasonable, arbitrary, or unconscionable." *State ex rel. Dreamer v. Mason,* 115 Ohio St.3d 190, 2007-Ohio-4789, 874 N.E.2d 510, ¶ 18.

{¶ 28} Duncan cannot establish an abuse of discretion here. He failed to submit a transcript of the evidentiary hearing before the court of appeals magistrate on the motion for sanctions. " 'When portions of the transcript necessary for resolution of assigned errors are omitted from the record, the reviewing court has nothing to pass upon and thus, as to those assigned errors, the court has no choice but to presume the validity of the lower court's proceedings, and affirm.' " *Crane v. Perry Cty. Bd. of Elections,* 107 Ohio St.3d 287, 2005-Ohio-6509, 839 N.E.2d 14, ¶ 37, quoting *Knapp v. Edwards Laboratories* (1980), 61 Ohio St.2d 197, 199, 15 O.O.3d 218, 400 N.E.2d 384; cf. Civ.R. 53(D)(3)(b)(iii).

{¶ 29} In addition, the evidence indicated that Duncan refused to provide discoverable documents and attempted to erase part of one of these documents. See *In re Michael* (1997), 119 Ohio App.3d 112, 136, 694 N.E.2d 538 ("the opposing party has an absolute right to examine a writing used to refresh a witness's recollection *while* testifying" [emphasis sic] ); *Simeone v. Girard City Bd. of Edn.,* 171 Ohio App.3d 633, 2007-Ohio-1775, 872 N.E.2d 344, ¶ 69–74 (court has authority to impose sanction for destruction of relevant evidence).

{¶ 30} Thus, the court of appeals did not abuse its discretion in imposing a $300 sanction on Duncan for his discovery violations.

## Conclusion

{¶ 31} Based on the foregoing, the court of appeals correctly denied the writ and imposed sanctions. Therefore, we affirm the judgment of the court of appeals.

Judgment affirmed.

MOYER, C.J., and PFEIFER, LUNDBERG STRATTON, O'CONNOR, O'DONNELL, LANZINGER, and CUPP, JJ., concur.

Richard A. Duncan, pro se.

Taft, Stettinius & Hollister, L.L.P., Thomas J. Lee, and Dawn J. Doran; and Tomino & Latchney, L.L.C., L.P.A., and John D. Latchney, for appellees.

MOYER, C.J., and PFEIFER, LUNDBERG STRATTON, O'CONNOR, O'DONNELL, LANZINGER, and CUPP, JJ., concur.