**LAKE POINTE CONSTRUCTION COMPANY, INC. et al., Appellants,**

v.

**CITY OF AVON et al., Appellees.**

[Cite as *Lake Pointe Constr. Co., Inc. v. Avon,* 182 Ohio App.3d 554, 2009-Ohio-2613.]

Court of Appeals of Ohio,
Ninth District, Lorain County.

No. 08CA009483.

Decided June 8, 2009.

John P. Slagter and Anthony R. Vacanti, for appellants.

Richard D. Panza and Matthew W. Nakon; and John A. Gasior, for appellees.

WHITMORE, Judge.

{¶ 1} Plaintiffs-appellants, Lake Pointe Construction Company, Inc., and others ("Lake Pointe"), appeal from the judgment of the Lorain County Court of Common Pleas, granting summary judgment in favor of the city of Avon ("Avon") and Avon's Ohio City Council ("the council"). This court reverses.

I

{¶ 2} This appeal stems from Lake Pointe's attempt to have 22.7 acres of its property rezoned. In 2005, Lake Pointe petitioned Avon's Planning and Zoning Commission to remove the R–2 single- and double-family residential classification from its property and to place a mixture of new C–2 and C–3 commercial classifications on the property. Although Avon's Planning and Zoning Commission recommended approving the rezoning, the council ultimately rejected Lake Pointe's rezoning petition.

{¶ 3} On January 3, 2006, Lake Pointe filed a declaratory-judgment action against Avon and the council, seeking a declaration that the zoning classification applicable to Lake Pointe's property was unconstitutional and amounted to a taking without just compensation. On September 7, 2006, Lake Pointe filed a petition for a writ of mandamus against Avon to compel Avon to initiate appropriation proceedings so as to compensate Lake Pointe for the taking of its

property. On October 3, 2006, the trial court consolidated the two cases based on their common issues of law and fact.

{¶ 4} Subsequent to the filing of Lake Pointe's lawsuit, Avon instituted proceedings to rezone Lake Pointe's property. In June 2006, 12.6 acres of Lake Pointe's property were rezoned from their R–2 residential classification to a C–2 commercial classification. In April 2008, the remaining 10.1 acres at issue were rezoned from their R–2 classification to an O–1 office classification. Consequently, Avon removed the R–2 zoning classification from all 22.7 acres of Lake Pointe's property during the pendency of Lake Pointe's suit against Avon and the council.

{¶ 5} On August 1, 2008, Lake Pointe filed a partial motion for summary judgment. Lake Pointe sought compensation for the time period from which the council denied its rezoning petition up until the time that Avon rezoned the property itself. On September 2, 2008, Avon and the council filed their own motion for summary judgment. On September 25, 2008, the trial court granted Avon and the council's motion for summary judgment. The trial court reasoned that the evidence submitted by the parties demonstrated only that Lake Pointe's former R–2 zoning classification was "inappropriate": an insufficient basis upon which to conclude that the initial refusal to rezone constituted a taking. The trial court further reasoned that Lake Pointe was responsible for the council's refusal to rezone the property because Lake Pointe never amended its rezoning request or submitted alternate proposals when it became clear that the request for partial C–3 zoning was likely to fail.

{¶ 6} Lake Pointe now appeals from the trial court's judgment and raises two assignments of error for our review. For ease of analysis, we combine the assignments of error.

## II

### Assignment of Error Number One

The trial court erred by denying Lake Pointe's amended partial motion for summary judgment on the takings claims because there are no genuine issues of material fact and Lake Point[e] is entitled to judgment as a matter of law.

### Assignment of Error Number Two

The trial court erred when it granted the city's cross-motion for summary judgment on the takings claims because there are genuine issues of material fact concerning whether a temporary regulatory taking occurred during the periods.

{¶ 7} In its first assignment of error, Lake Pointe argues that the trial court erred in denying its partial motion for summary judgment. Specifically, Lake Pointe argues that no genuine issues of material fact remain because its evidence established that Avon and the council's initial refusal to rezone deprived Lake Pointe of all economically viable uses of its property, amounted to a temporary taking, and entitled Lake Pointe to just compensation. In its second assignment of error, Lake Pointe argues that the trial court erred in granting Avon and the council's motion for summary judgment. Specifically, Lake Pointe argues that its evidence established that genuine issues of material fact remain as to whether a temporary taking occurred between the time that its rezoning petition was rejected and the time that Avon and the council rezoned the area in June 2006 and April 2008.

{¶ 8} This court reviews an award of summary judgment de novo. *Grafton v. Ohio Edison Co.* (1996), 77 Ohio St.3d 102, 105, 671 N.E.2d 241. We apply the same standard as the trial court, viewing the facts of the case in the light most favorable to the nonmoving party and resolving any doubt in favor of the nonmoving party. *Viock v. Stowe–Woodward Co.* (1983), 13 Ohio App.3d 7, 12, 13 OBR 8, 467 N.E.2d 1378.

{¶ 9} Pursuant to Civ.R. 56(C), summary judgment is proper if:

(1) No genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party.

*Temple v. Wean United, Inc.* (1977), 50 Ohio St.2d 317, 327, 4 O.O.3d 466, 364 N.E.2d 267. The party moving for summary judgment bears the initial burden of informing the trial court of the basis for the motion and pointing to parts of the record that show the absence of a genuine issue of material fact. *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 292–293, 662 N.E.2d 264. Specifically, the moving party must support the motion by pointing to some evidence in the record of the type listed in Civ.R. 56(C). Id. Once this burden is satisfied, the nonmoving party bears the burden of offering specific facts to show a genuine issue for trial. Id. at 293, 662 N.E.2d 264. The nonmoving party may not rest upon the mere allegations and denials in the pleadings, but instead must point to or submit some evidentiary material that demonstrates a genuine dispute over a material fact. *Henkle v. Henkle* (1991), 75 Ohio App.3d 732, 735, 600 N.E.2d 791.

{¶ 10} "Mandamus is the appropriate action to compel public authorities to institute appropriation proceedings where an involuntary taking of private property is alleged." *State ex rel. Shemo v. Mayfield Hts.* (2002), 95 Ohio St.3d 59, 63, 765 N.E.2d 345. " 'The United States and Ohio Constitutions guarantee

that private property shall not be taken for public use without just compensation.'" *State ex rel. Duncan v. Middlefield*, 120 Ohio St.3d 313, 2008-Ohio-6200, 898 N.E.2d 952, ¶ 16, quoting *State ex rel. Shemo* at 63, 765 N.E.2d 345. When governmental action deprives a landowner of the use of his land for a temporary period of time, "'the Just Compensation Clause of the Fifth Amendment requires that the government pay the landowner for the value of the use of the land during this period.'" *State ex rel. Shemo* at 67, 765 N.E.2d 345, quoting *First English Evangelical Lutheran Church of Glendale v. Cty. of Los Angeles* (1987), 482 U.S. 304, 319, 107 S.Ct. 2378, 96 L.Ed.2d 250. A landowner can establish a temporary taking from the imposition of a zoning scheme by (1) establishing that the scheme amounted to a total taking that deprived the landowner of all economically viable use of his land or (2) establishing that the scheme amounted to a partial taking that deprived the landowner of less than 100 percent of his land's economically viable use. *State ex rel. Gilmour Realty, Inc. v. Mayfield Hts.*, 119 Ohio St.3d 11, 2008-Ohio-3181, 891 N.E.2d 320, ¶ 21; *State ex rel. Shemo* at 63–64, 765 N.E.2d 345.

{¶ 11} Here, Lake Pointe argued only that Avon's zoning scheme deprived it of all economically viable use of its property. In its reply to Avon and Council's brief in opposition to summary judgment, Lake Pointe specifically indicated to the trial court that it "should limit its review to the single issue of whether the R–2 designation denied all economically viable use of the [property] for the Period." Consequently, our review is limited to a determination of whether the trial court erred in granting Avon and Council summary judgment on the basis that Lake Pointe failed to raise genuine issues of material fact concerning the economic viability of its property under Avon's zoning scheme.

{¶ 12} The fact that residentially zoned property is not suitable for residential use does not necessarily mean that the property has no economically viable use. *State ex rel. Shemo*, 95 Ohio St.3d at 65, 765 N.E.2d 345. " '[S]omething more than loss of market value or loss of the comfortable enjoyment of the property is needed to constitute a taking.'" *State ex rel. BSW Dev. Group v. Dayton* (1998), 83 Ohio St.3d 338, 344, 699 N.E.2d 1271, quoting *State ex rel. Pitz v. Columbus* (1988), 56 Ohio App.3d 37, 41, 564 N.E.2d 1081. Moreover, mere allegations that a property's current use is unprofitable will not suffice to raise a genuine issue of material fact. *State ex rel. Trafalgar Corp. v. Miami Cty. Bd. of Commrs.*, 104 Ohio St.3d 350, 2004-Ohio-6406, 819 N.E.2d 1040, ¶ 26. The evidence must demonstrate that a zoning scheme deprived landowners of "*all economically viable use* of their property," not just "the *use* of [their] property." (Emphasis sic.) *State ex rel. Shemo* at 65, 765 N.E.2d 345.

{¶ 13} Lake Pointe argues that the trial court erred in granting Avon and the council summary judgment because the following evidence demonstrated that

Avon's zoning scheme deprived Lake Pointe of all economically viable use of its property: (1) the affidavit of Dr. Alan Weinstein, an associate professor for the Cleveland–Marshall College of Law and the Maxine Goodman Levin College of Urban Affairs, (2) the affidavit of Greg Romes, the President of Lake Pointe, and (3) the expert report of Mark Majewski, a zoning and planning consultant. In his affidavit, Dr. Weinstein attested to the following:

6. The R–2 zoning at the [property] is not economically viable because of the changes to the surrounding area. It is unlikely that the [property] would be developed under the R–2 zoning.

7. The existing R–2 zoning, as applied to the [property], is not appropriate from a professional planning perspective.

In his affidavit, Romes stated that "based upon my experience and expertise in the construction industry, it is my opinion that the R–2 zoning as applied to the property * * * denied Lake Pointe all economically beneficial use of the subject property." Finally, in his expert report, Majewski stated that the "R–2 zoning classification of [the property] is * * * not appropriate due to the limited list of uses permitted." The report also noted that Avon "should consider amending the zoning * * * to provide for a more intensive and economically feasible use of these properties." In his affidavit, however, Majewski clarified that he "conducted no study and offered no opinion as to the economic feasibility of residential, office or commercial zoning on the property." Majewski specified that his opinion was limited to the conclusion that an R–2 zoning scheme "did not represent the most suitable, most appropriate or highest use of the Property taken as a whole."

{¶ 14} Avon and the council rely upon this court's decision in *Trademark Homes v. Avon Lake Bd. of Zoning Appeals* (1993), 92 Ohio App.3d 214, 634 N.E.2d 685, for the proposition that a landowner cannot demonstrate a compensable taking when he "purchases property with an existing, non-lucrative zoning classification [and] * * * the legislative body declines to rezone as he desires." In *Trademark Homes*, however, this court held that the enforcement of a zoning scheme does not amount to a taking when a property owner "bought the property knowing of the restriction *and* had not lost 'all economically beneficial uses.'" (Emphasis added.) *Trademark Homes* at 218, 634 N.E.2d 685, quoting *Community Concerned Citizens, Inc. v. Union Twp. Bd. of Zoning Appeals* (1993), 66 Ohio St.3d 452, 458, 613 N.E.2d 580. The fact that Lake Pointe purchased its property knowing of Avon's zoning classification does not end the analysis. The Ohio Supreme Court has rejected the argument that a landowner who acquires property with an existing zoning scheme is barred from asserting a takings claim. *State ex rel. Shemo*, 95 Ohio St.3d at 65–66, 765 N.E.2d 345. If Avon's zoning

scheme deprived Lake Pointe of all the economically viable use of its property, then a taking occurred. *Trademark Homes* at 218, 634 N.E.2d 685.

{¶ 15} Next, Avon and the council argue that Lake Pointe cannot recover under a takings theory because Avon and the council's delay in rezoning Lake Pointe's property was not unreasonable. Avon and the council note that Lake Pointe was responsible for much of the delay by failing to amend its zoning petition or to submit alternate proposals that requested more appropriate zoning classifications. They argue that Lake Pointe should not be able to profit from the delay that it caused in the rezoning by failing to submit an alternate zoning proposal or amended petition. Yet, delay is a factor in a partial regulatory taking analysis. *State ex rel. Duncan,* 120 Ohio St.3d 313, 2008-Ohio-6200, 898 N.E.2d 952, ¶ 18–19. The issue in a total regulatory taking analysis is whether the landowner was deprived of all economically viable use of the land. See *State ex rel. Shemo,* 95 Ohio St.3d at 63–65, 765 N.E.2d 345. See also *First English Evangelical Lutheran Church of Glendale,* 482 U.S. at 321, 107 S.Ct. 2378, 96 L.Ed.2d 250 (noting that consideration of delay was unnecessary where allegation in owner's complaint was that ordinance denied it all use of its property). It is true that a landowner's failure to pursue alternatives, such as alternate zoning plan proposals, might affect the landowner's ability to prove that the application of the zoning scheme at issue denied him all economically viable use. See *Williamson Cty. Regional Planning Comm. v. Hamilton Bank of Johnson City* (1985), 473 U.S. 172, 187–191, 105 S.Ct. 3108, 87 L.Ed.2d 126. The focus of the inquiry, however, continues to be whether a deprivation of all economically viable use occurred.

{¶ 16} Finally, Avon and the council argue that Lake Pointe conceded that multiple zoning classifications could apply to its property and that the property always had "economically viable residential uses." In support of their argument, Avon and the council point this court to page two, paragraph nine of the supplemental affidavit of James Piazza, a planning coordinator for Avon. But the record contains only the first and last pages of Piazza's affidavit. The page to which Avon and the council point this court is missing from Piazza's affidavit. Therefore, we cannot consider Avon and the council's last argument.

{¶ 17} The trial court determined that Avon and the council were entitled to summary judgment because (1) Lake Pointe's evidence showed only that the former R–2 zoning that applied to its property was "not appropriate" and (2) any delay in rezoning was due to Lake Pointe's failure to amend its zoning petition or to submit alternate proposals. Our review of the record evinces that at least two pieces of evidence support Lake Pointe's argument. In his affidavit, Dr. Weinstein stated that the R–2 zoning scheme that applied to Lake Pointe's property was not economically viable. In Romes's affidavit, he stated that the

scheme "denied Lake Pointe all economically beneficial use of the subject property." Consequently, the trial court erred in concluding that Lake Pointe's evidence showed only that the R–2 zoning scheme was "not appropriate."

{¶ 18} The trial court also erred in concluding that Avon and the council were entitled to summary judgment on the basis that Lake Pointe "elected not to amend its [zoning] request or to submit alternate proposals." A landowner's failure to amend his zoning request or to submit alternate proposals may detract from the landowner's ability to prove that his property truly had no economically viable use. Id. Yet, the focus of the inquiry must be whether economically viable use was denied. See *State ex rel. Shemo*, 95 Ohio St.3d at 63–65, 765 N.E.2d 345. Neither the trial court nor Avon and the council pointed to any law in support of the proposition that a landowner's failure to amend its zoning request or to submit alternate proposals affirmatively bars him from prevailing on his takings claim. Moreover, because the trial court focused on Lake Pointe's failure to amend its request or to submit alternate proposals, the trial court granted summary judgment to Avon and the council without finding that no genuine issues of material fact remained on the issue of economically viable use. Lake Pointe offered at least two pieces of evidence to show that it had been denied all economically viable use of its property. The trial court did not address this evidence. Because genuine issues of material fact remain, the trial court erred in granting Avon and the council's motion for summary judgment. Lake Pointe's second assignment of error is sustained. Based on this conclusion, Lake Pointe's first assignment of error is moot, and we will not address it.

## III

{¶ 19} Lake Pointe's first assignment of error is moot, and its second assignment of error is sustained. The judgment of the Lorain County Court of Common Pleas is reversed, and the cause is remanded for further proceedings consistent with the foregoing opinion.

*Judgment reversed
and cause remanded.*

DICKINSON, P.J., and BELFANCE, J., concur.