[Cite as *Wallace v. Nally*, 2015-Ohio-4146.]

STATE OF OHIO, COLUMBIANA COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| DENNIS SCOTT WALLACE, | ) | CASE NO. 14 CO 32 |
| | ) | |
| PLAINTIFF-APPELLANT, | ) | |
| | ) | |
| VS. | ) | OPINION |
| | ) | |
| SCOTT NALLY, DIRECTOR OF | ) | |
| ENVIRONMENTAL PROTECTION | ) | |
| AND PENN OHIO WASTE, LLC, | ) | |
| | ) | |
| DEFENDANTS-APPELLEES. | ) | |

CHARACTER OF PROCEEDINGS:      Administrative Appeal from the
Environmental Review Appeals
Commission
Case No. ERAC13-156747

JUDGMENT:                                        Affirmed.

JUDGES:

Hon. Carol Ann Robb
Hon. Gene Donofrio
Hon. Cheryl L. Waite

Dated:  October 2, 2015

[Cite as *Wallace v. Nally*, 2015-Ohio-4146.]
APPEARANCES:

For Plaintiff-Appellant:                    Dennis Scott Wallace, *pro se*
                                            6607 Carbon Hill Rd.
                                            East Palestine, Ohio 44413


For Defendants-Appellees:                   Atty. Michael A. Cyphert
                                            Atty. Leslie G. Wolf
                                            Walter & Haverfield, LLP
                                            The Tower at Erieview
                                            1301 East Ninth St., Suite 3500
                                            Cleveland, Ohio  44114

                                            Atty. George Horvath
                                            Senior Assistant Attorney General
                                            Atty. Elyse Akhbari
                                            Ohio Attorney General Office
                                            Environmental Enforcement Section
                                            30 East Broad Street, 25th Floor
                                            Columbus, Ohio 43215

ROBB, J.

{¶1} Plaintiff-Appellant Dennis Scott Wallace appeals from the decision of the Environmental Review Appeals Commission ("the Commission") dismissing his case for failure to prosecute after he informed the Commission that he could not proceed without discovery of specific documents which the Commission denied. On appeal, he does not contest the dismissal but focuses on the Commission's denial of his requests to compel production of documents and to enter a waste facility's property for collection of water samples. For the following reasons, the Commission's decision is affirmed.

STATEMENT OF THE CASE

{¶2} In 2010, Appellant filed a verified complaint with Ohio Environmental Protection Agency ("Ohio EPA") pursuant to R.C. 3745.08, alleging that Total Waste Logistics, LLC violated the law and its operating permit by discharging an unknown effluent from the Penn-Ohio Facility into a waterway in Negley, Ohio. The landfill is now operated by Appellee Tervita, LLC ("Tervita"). The Ohio EPA Director ordered an investigation to determine whether a violation occurred and announced that he would make his determination after the investigative report with recommendations was submitted. Appellant filed similar complaints in 2011 and 2012 alleging continued discharges.

{¶3} On June 3, 2013, Ohio EPA Director Scott J. Nally issued a decision dismissing Appellant's complaints. The decision stated the facility was permitted to conduct construction and demolition debris disposal operations on an expansion area if certain modified licensing conditions concerning groundwater were met. The decision referred to water sampling conducted in 2010, 2011, and 2012. It noted that some water appeared to be influenced by mine spoils in the area but did not appear to be adversely impacted by waste disposal activities. The decision concluded the disposal operation did not adversely impact the groundwater quality and found compliance with the licensing conditions.

**{¶4}** Appellant filed a timely appeal with the Commission, resulting in ERAC Number 13-156747. In setting forth the grounds upon which the appeal to the Commission was based as required by R.C. 3745.04(D), Appellant submitted the following assignments of error: (1) on October 5, 2010, six months after he contacted the Ohio EPA about an illegal discharge on State Route 170, the EPA collected water samples; (2) in collecting a water sample on March 21, 2011, the EPA only checked for inorganics and did not run a "VOC organic test," and other testing showed the discharge was "VOC contaminated" and inorganics exceeded drinking water standards; (3) the Director's action is in error because Ohio EPA personnel submitted false information or failed to submit information pertaining to discharges in violation of the license and landowners' rights; and (4) the Director's action is in error because the 2011-2013 permits expand the landfill over an earthquake fault and into an aquifer creating risks to health and safety and constituting a nuisance and trespass.

**{¶5}** The Director filed an answer, as did Tervita after intervening in the proceedings. A case management schedule was jointly established, setting a de novo hearing date for February of 2014. *See* R.C. 3745.05(A) (de novo hearing if no adjudication hearing was conducted by the Director). Appellant mailed his requests for production of documents near the October 18 deadline for discovery, seeking documents on the site's hydrology, water testing, permits, and other information.

**{¶6}** On October 28, 2013, Appellant filed a request for the Commission to "close the dump site, and make it a burial site for 9/11 people who died and were Dumped as garbage * * * without the consent of their loved ones" or to force the owner to "remove all body parts, and place them in a proper site for burial." He suggested that debris from the World Trade Center was deposited at this landfill and presumed that any debris from such disaster would contain human remains.

**{¶7}** That same day, Appellant filed a request for production of documents "pertaining to the material from 9/11 in New York brought to the Negley, Ohio site." The request was certified as being served on October 24, 2013 (and was notarized with that date). Appellant wrote, "NUNK PRO TUNK 10/18/2013" above his signature, which date represented the deadline for discovery.

**{¶8}** The Director responded by pointing out that one cannot make a discovery request timely by writing the discovery deadline after the (misspelled) Latin phrase "nunc pro tunc" which is used to indicate "now for then." The Director stated he was not obligated to respond to the request and characterized the request as unclear.

**{¶9}** Tervita's response added that the information Appellant sought was not relevant to the subject matter of the appeal and was not reasonably calculated to lead to the discovery of admissible evidence. Tervita also explained that public information indicated most of the debris from the World Trade Center was trucked to a landfill in Staten Island where the government recovered human remains before burying the debris in a dedicated forty acre area. Tervita urged that nothing containing human remains was disposed of outside of that dedicated site. Finally, Tervita concluded that it possessed no evidence or information that debris from the World Trade Center was disposed of at the Penn-Ohio facility.

**{¶10}** On October 30, 2013 (before these responses by appellees were filed), the Commission construed Appellant's filings as motions and denied them. On November 7, 2013, Appellant filed various documents, including a request for reconsideration. He stated the permit required the licensee to operate the facility so as not to create a nuisance or contribute to water pollution, the dumping of body parts created a hazard to the water supply, and the permit allowed the Director to inspect all records. In another document, Appellant explained "what the Appellant is looking for is proof of the Bodies of those who died at 9/11 in New York, that were not verified, as person, that were sent to Youngstown, Ohio where the material was ground up then transported, to the Negley site where the body parts (that were ground up with the other material) was dumped at the Negley site as garbage." He concluded that he needed a list of all material brought to the site with a description of where it originated.

**{¶11}** On November 14, 2013, the Commission denied Appellant's motion for reconsideration. The Commission granted Appellant's request for a continuance of

the remaining case management schedule (which included a de novo hearing set for February of 2014) due to the medical condition of Appellant's expert witness.

{¶12} On November 25, 2013, Appellant filed another request for production of documents and records concerning material received, adding that it should cover "the whole time the dump was in operation." He noted that the Director has the right to inspect such documents. On December 9, 2013, Appellant filed a motion to compel Tervita to produce all documents for material delivered to the Negley site since it was first operational, stating Tervita denied his request for such documents. He filed a similar motion to compel against the Director the next day to which the Director responded by stating the Ohio EPA does not possess documentation of material delivered to the facility.

{¶13} The Commission denied the motions to compel on December 11, 2013. On December 19, 2013, Appellant sought reconsideration of the denial of his motion to compel production of documents (and asked for judgment in his favor for the failure to provide the requested documents). On December 24, 2013, the Commission denied Appellant's motions for reconsideration and for judgment.

{¶14} Appellant filed a notice of appeal from that order on January 8, 2014, resulting in 7th Dist. Case No. 14CO2. This court dismissed the appeal for lack of a final appealable order. *See* Feb. 6, 2014 Judgment Entry (dismissing appeal) and Mar. 6, 2014 Judgment Entry (clarifying that dismissal was for lack of final order).

{¶15} On February 26, 2014, the new case management schedule was filed over Appellant's objection; he insisted that he could not proceed without the requested discovery. The expert reports were to be served by Appellant on June 5. The Commission warned that the failure to follow the schedule warranted dismissal of the appeal for want of prosecution.

{¶16} Also on February 26, Appellant filed a motion to keep discovery open and another motion to compel the Director and Tervita to produce the requested documents. On March 18, 2014, the Commission denied Appellant's motion to compel production of documents, noting that it constituted the seventh of such motions filed with the Commission.

{¶17} The Commission found the documents were not relevant to the subject matter of the case before it, which challenged the Director's response to three verified complaints. Furthermore, the requested documents were not reasonably calculated to lead to the discovery of evidence which would be admissible. The Commission also pointed out that a party need not produce documents it does not maintain. Appellant was again warned that the failure to adhere to the case management schedule would result in dismissal.

{¶18} Appellant filed a statement declaring that he could not proceed further in the case without the requested discovery documents. He explained that he would appeal the discovery orders after the Commission's final order. (Appellant's filing of Apr. 18, 2014.) He reiterated his position in a May 9 filing. He filed another request to stay the schedule until he received documentation for materials brought onto the site. (Appellant's filing of Apr. 23, 2014.) He opposed the notice of deposition date that was served on his expert, stating that there can be no deposition until he has received the documents requested. (Appellant's filings of May 2, May 9, and May 22, 2014.) Also, on May 22, Appellant advised that he was not able to proceed with trial without the requested discovery. His requests to stay the timetable were denied twice. (Commission decisions of May 13 and May 27, 2014.)

{¶19} In the meantime, Appellant served and filed a document entitled, "Request to Enter Tervita's Property To Collect Samples under Discovery of Streams And Seeps for Macroinvertebrate Sampling," which explained only that it was "to have test taken of Stream but labeled Seep No. (5)." (Filing of March 6, 2014.) Tervita objected on the basis that the request to enter was not a permissible method for obtaining discovery, it was served without leave of the Commission after the deadline for discovery, and it sought discovery of information which was neither relevant to the subject matter of the appeal nor reasonably calculated to lead to the discovery of admissible evidence (sampling for macroinvertebrates would not result in the discovery of information relevant to Appellant's assignments of error). Tervita also stated that the request was vague and insufficient for a proper response.

**{¶20}** On April 21, 2014, Appellant filed a motion asking the Commission to order Tervita to allow him onto the property to test the water source without further explanation. He mentioned the Director has permission to enter and asked that both he and the Director access the property at the same time.

**{¶21}** Tervita responded by reiterating its objections and noting Appellant made no effort to communicate with counsel after Tervita's objection was filed. Instead, Appellant and several others arrived at the facility in two pick-up trucks, and Appellant advised that he had his "biologist" with him to collect samples. They were turned away.

**{¶22}** On May 13, 2014, the Commission denied Appellant's motion to compel Tervita to allow access to the facility. Appellant filed an "objection" to the ruling, asking the Commission to change its order and allow him on the property to test streams, which he said was required to prove his case. (Appellant's filing of May 22, 2014.) This motion was denied on May 27, 2014.

**{¶23}** On June 6, 2014, Appellant filed a notice declaring he was unable to proceed without the requested discovery, stating that if the Commission would not compel Tervita to provide the discovery, then the Commission should make its final order so Appellant could appeal to the court of appeals. This prompted Appellees to file a joint motion to dismiss. Appellees stated that they have not failed to comply with any obligations to produce documents and stated that the documents Appellant demands do not exist and cannot be produced. They asked that the dismissal be considered a voluntary dismissal or, in the alternative, a dismissal for want of prosecution. *Citing* O.A.C. 3746-5-28(A) (party can dismiss own appeal by written motion); (B) (all dismissals with prejudice); (C) (dismissal for want of prosecution, after notice, due to failure to pursue appeal or failure to comply with rules or orders of commission).

**{¶24}** Appellant responded that the motion to dismiss should be denied because Tervita's claim that the requested discovery cannot be produced is a lie. Appellant reiterated that the discovery of all documents listing all material brought

into the dump was needed in order for him to proceed. He also filed documents stating that his expert cannot be deposed due to this lack of discovery.

**{¶25}** On July 2, 2014, the Commission found that Appellant was unwilling or unable to further prosecute the appeal and dismissed the matter for want of prosecution. The Commission noted that it had reviewed his numerous filings related to discovery requests, construed them as motions to compel, and denied each request. It was explained that Appellant failed to establish the materials were reasonably calculated to lead to admissible evidence.

<u>PRELIMINARY ISSUES</u>

**{¶26}** Appellant previously filed an appeal from interlocutory orders of the Commission in this case. We dismissed that appeal explaining that the appeal would be accepted after a final order. *See Wallace v. Nally*, 7th Dist. No. 14CO2 (Mar. 6, 2014 J.E.). Appellant filed a timely notice of appeal to this court within thirty days of the Commission's final decision. *See* R.C. 3745.06. Said statute also provides: "Any party adversely affected by an order of the environmental review appeals commission may appeal to the court of appeals of Franklin county, or, if the appeal arises from an alleged violation of a law or regulation, to the court of appeals of the district in which the violation was alleged to have occurred."

**{¶27}** This appeal arose from a case initiated by a verified complaint filed under R.C. 3945.07. This type of appeal involves an "alleged violation" for purposes of filing the appeal in the district where the allegation arose. *See, e.g., Kimble Clay & Limestone v. McAvoy*, 59 Ohio St.2d 94, 391 N.E.2d 1030 (1979) (whereas basic permit proceedings which ascertain compliance with standards for granting or denying a permit must be filed in appellate court of Franklin County as said proceeding does not arise from a "violation"). This appeal was filed in the correct appellate district. *Compare Wallace v. Nally*, 7th Dist. No. 14CO35, 2015-Ohio-497 (dismissing the appeal from the Director's grant of Tervita's annual permit because the appeal should have been filed in the Tenth District).

**{¶28}** The general statutory standard of review is to determine if the order is supported by reliable, probative, and substantial evidence and is in accordance with

law. R.C. 3745.06. The final order was the Commission's dismissal for failure to prosecute. All rulings by the Commission granting a motion to dismiss shall be with prejudice. O.A.C. 3746-5-28(B).

{¶29} "Where an appellant fails to pursue an appeal or fails to comply with these rules or orders of the commission, the commission, upon motion of appellee or upon its own motion, may, after notice to the appellant, dismiss an appeal for want of prosecution." O.A.C. 3746-5-28(C). A decision to dismiss for failure to prosecute is reviewed under an abuse of discretion standard that is considered "heightened" where the dismissal is with prejudice. *Jones v. Hartranft*, 78 Ohio St.3d 368, 371-372, 678 N.E.2d 530 (1997) (some of the factors the court considers include evidence that a plaintiff is deliberately proceeding in a dilatory fashion and the drawn-out history of the litigation, including a plaintiff's failure to respond to discovery requests until threatened with dismissal).

{¶30} As Appellees point out, Appellant does not assign as error the decision to dismiss the matter for lack of prosecution or argue that said decision was unwarranted. Rather, Appellant sets forth four assignments of error alleging that the commission improperly denied his request for production of documents and to enter onto the property for water testing.[1] The Director points out that Appellant's entire legal argument is based on discovery rulings and asserts: "Mr. Wallace's issues presented are of no moment given the Commission's grounds for dismissing his 2013 Appeal (Dismissal for want of prosecution)."

{¶31} Appellant previously attempted to appeal from some of the Commission's decisions when the Commission rejected Appellant's request to order the production of certain documents. This court held that Appellant could not appeal

---

[1] The brief of the Ohio EPA Director notes that Appellant's brief lists four "certified conflict questions" at page iv. The Director suggests that we ignore these questions because an appellate brief in the court of appeals is not the proper place to address a "certified conflict" and there are no cases said to be in conflict here. *See* App.R. 25 (dealing with certifying to the Supreme Court a conflict of our decision with another appellate court's decision). This is true, but Appellant's choice of language for a label does not eliminate the questions posing issues presented for review. *See* App.R. 16(A)(2). Additionally, the four questions correspond with and are restated in the four "errors" which Appellant lists on page 1, and appellant thereafter outlines his arguments as to each "error" on pages 2-3. *See* App.R. 16(A)(3), (7).

the interlocutory orders as they were not final and stated: "The propriety of the rulings is subject to review at the conclusion of proceedings before the Commission, should Wallace not prevail on his complaint." *See Wallace*, 7th Dist. No. 14CO2.

**{¶32}** Appellant seemingly instigated a dismissal for failure to prosecute. On appeal, he does not raise an issue with the propriety of the dismissal for failure to prosecute. Rather, he raises only the interlocutory discovery decisions. He believes he has found a way to place the discovery issue before us without proceeding to trial (or through motion practice).

**{¶33}** Initially, it should be recognized that interlocutory orders can become final upon the entry of final judgment so that an appeal from the final judgment includes the interlocutory orders merged with it. *See, e.g., O'Connor v. Fairview Hosp.*, 8th Dist. No. 98721, 2013-Ohio-1794, ¶ 19; *Siemaszko v. FirstEnergy Nuclear Operating Co.*, 187 Ohio App.3d 437, 2010-Ohio-2121, 932 N.E.2d 414, ¶ 9 (6th Dist.); *Accu-Check Instrument Serv., Inc. v. Sunbelt Business Advisors of Cent. Ohio*, 10th Dist. Nos. 09AP-505, 09AP-506, 2009-Ohio-6849, ¶ 23; *In re Kelleher*, 7th Dist. Nos. 08JE31, 08JE32, 08JE33, 08JE34, 2009-Ohio-2960, ¶ 15 (denial of motion to compel discovery is not a final appealable order; Appellant's recourse is to wait until final judgment in the case is reached); *MacConnell v. Safeco Property*, 2d Dist. No. 21147, 2006-Ohio-2910, ¶ 49 (otherwise a party could be foreclosed from appellate review of discovery orders). *See also* App.R. 3(C)(1) (party can cross-appeal to change an interlocutory order merged into final judgment).

**{¶34}** Yet, some interlocutory orders merge out of existence upon the final order. *See, e.g., Zawrotuck v. Zawrotuck,* 7th Dist. No. 14MA13, 2014-Ohio-5225, ¶ 28 (ex parte protection order). In addition, where the final order rests upon the grounds of failure to prosecute, an exception can arise to the general doctrine allowing the appeal of interlocutory orders after the final order.

**{¶35}** For instance, some courts have stated that interlocutory orders do not merge into a judgment of dismissal for failure to prosecute, and thus, the interlocutory rulings are not addressable on appeal in such cases. *See Arndt v. P&M Ltd.*, 11th Dist. No. 2009-P-0088, 2011-Ohio-649, ¶ 37, appeal not accepted for review, 129

Ohio St.3d 1476, 2011-Ohio-4751, 953 N.E.2d 842. *See also DuBose v. Minnesota*, 893 F.2d 169, 171 (8th Cir. 1990); *Huey v. Teledyne, Inc.*, 608 F.2d 1234, 1239 (9th Cir. 1979) ("Where the record shows that the denial of class certification caused the failure to prosecute, that ruling does not merge in the final judgment for purposes of appellate review, at least where, as here, the resulting dismissal was proper.")

**{¶36}** The doctrine allowing rulings on interlocutory orders to be reviewed as part of the final judgment should not apply where it rewards a party for dilatory or bad faith tactics. *Sere v. Board of Trustees of the Univ. of Illinois*, 852 F.2d 285, 288 (7th Cir. 1988). Furthermore:

> If a litigant could refuse to proceed whenever a trial judge ruled against him, wait for the court to enter a dismissal for failure to prosecute, and then obtain review of the judge's interlocutory decision, the policy against piecemeal litigation and review would be severely weakened. This procedural technique would in effect provide a means to avoid the finality rule embodied in [the statute governing appeals]. To review the district court's [interlocutory ruling] under the facts of this case is to invite the inundation of appellate dockets with requests for review of interlocutory orders and to undermine the ability of trial judges to achieve the orderly and expeditious disposition of cases.

*Marshall v. Sielaff*, 492 F.2d 917, 919 (3d Cir.1974).

**{¶37}** Another rationale is when a court dismisses the suit for failure to prosecute or comply with a court order, any interlocutory rulings preceding that dismissal become moot. *Hughley v. Eaton Corp.*, 572 F.2d 556, 557 (6th Cir.1978). *See also Arndt*, 11th Dist. No. 2009-P-0088 at ¶ 38. A dismissal for failure to prosecute is a means to penalize a dilatory party and is said to be independent of the merits of the prior interlocutory orders. *Hughley*, 572 F.2d 556, 557 ("the sufferance of a dismissal of a cause without prejudice is not to be employed as an avenue for reaching issues which are not subject to interlocutory appeal as of right").

**{¶38}** The concept has also been characterized as a "prudential rule" rather than a mandate so that the reviewing court can review an interlocutory order

preceding a dismissal for failure to prosecute "in that rare case when it makes sense to do so." *AdvantEdge Business Group, L.L.C. v. Mestmaker & Assoc., Inc.*, 552 F.3d 1233, 1237 (10th Cir.2009). That court expressed that applying the concept as a prudential rule "preserves for the unexceptional case the salutary principle of prohibiting manipulation of the district court processes to effect the pre-mature review of an otherwise unappealable interlocutory order." *Id.* at 1237-1238.

**{¶39}** In the case before us, Appellant is contesting interlocutory orders made months prior to a dismissal for failure to prosecute. Appellant does not assign the ultimate judgment as an error. Nor does he present arguments on whether it was improvidently granted. That is, he does not contest his failure to prosecute his appeal to the Commission.

**{¶40}** A case becomes moot when its issues "are no longer live." *State ex rel. Gaylor, Inc. v. Goodenow*, 125 Ohio St.3d 407, 2010-Ohio-1844, 928 N.E.2d 728, ¶ 10. This court concludes that the allegations raised on appeal became moot and were "no longer live" when the judgment of dismissal for failing to prosecute was issued, especially considering that the dismissal is not contested on appeal. Nevertheless, we continue to address Appellant's assignments of error for his benefit.

<u>ASSIGNMENTS OF ERROR ONE THROUGH THREE</u>

**{¶41}** Appellant's first three assignments of error deal with his discovery request for production of documents and contend:

"The Environmental Review Appeals Commission created an ERROR when it refused to order The Director of Environmental Protection and or Tervita to produce the discovery requested by the Appellant, Dennis Scott Wallace, as, on the face of the 2013 and 2014 License that were issued to Tervita to operate their waste Facility in Negley, Ohio states that the Licensee by accepting the License hereby agrees to the inspection of their records for the running and operating of the dump facility."

"The Environmental Review Appeals Commission created ERROR when they violated their own Rules, (3746-6-08 Motions to compel discovery), when it refused to order the Director of Environmental Protection and or Tervita to produce the

requested discovery once a Motion to compel Discovery was filed with the Commission by the Appellant, Dennis Scott Wallace."

"The Environmental Review Appeals Commission created an ERROR when it refused to abide by the Ohio Rules of Court pertaining to discovery."

{¶42} Appellant states that he requested discovery of bills of lading, invoices, and documents relating to all material brought into or out of the dump in Negley to discover "information about the Blood and Body Parts" brought to the facility. (Appellant's Brief in Conclusion at page 4). He suggests that an assistant attorney general raised this issue by asking him about it at a prior deposition or hearing. Appellant insists that his World Trade Center theory was a vital part of discovery affecting his ability to proceed to trial. (Appellant's Brief in Introduction at page v).

{¶43} Appellant notes that Tervita responded to his requests by stating that there were no such documents. The Director responded that it does not possess such documents. Appellant suggests that Tervita's claim in not credible. He also points out that Tervita's license permits the Director or an authorized representative to enter the premises for the purpose of inspecting, conducting tests, collecting samples, and examining records or reports concerning the operation of the facility. Appellant believes the Director had a discovery obligation to retrieve documents that he requests from Tervita.

{¶44} Appellant alleges the Commission violated O.A.C. 3746-6-08(A) and court rules concerning discovery by denying his motion to compel discovery. He argues that a motion to compel discovery cannot be denied once it is filed. He concludes by asking this court to "order the dump closed and made into a Park for those people from 911 who had their Blood and Body Parts dumped like common garbage in the Tervita Facility."

{¶45} As Appellant states, a party to a Commission proceeding, upon reasonable notice to all other parties, may move for an order compelling discovery due to the failure of a party to comply with a discovery request. See O.A.C. 3746-6-08(A). However, the mere filing of such a motion does not require its granting. Pursuant to division (C) of this section, "the commission may grant or deny the

motion in whole or in part." The Commission has discretion to deny a motion to compel discovery. O.A.C. 3746-6-08(C).

**{¶46}** As Appellant acknowledges, the Commission has its own discovery rules. They are similar to the Civil Rules in some ways but different in other ways. Appellant does not explain why he refers to court rules for discovery where there exist specific discovery rules for proceedings before the Commission. In any event, courts making discovery rulings under the pertinent Civil Rules, such as Civ.R. 26, have broad discretion. *State ex rel. Duncan v. Middlefield*, 120 Ohio St.3d 313, 2008-Ohio-6200, 898 N.E.2d 952, ¶ 27. Accordingly, a reviewing court can review discovery rulings only for an abuse of discretion. *Id.* This standard asks whether the discovery decision was unreasonable, arbitrary, or unconscionable. *Id.*

**{¶47}** Contrary to Appellant's claim, neither a court nor the Commission is required to grant a motion to compel merely because a party filed such a motion. Rather, the entity ruling on the discovery request has broad discretion. Under the particular circumstances of this case, it cannot be said that the Commission abused its discretion in denying Appellant's discovery requests to produce documents in order for him to attempt to establish that debris from the World Trade Center tragedy was buried at the facility and to support his position that the facility be closed and turned into a memorial for the victims of the tragedy.

**{¶48}** We note that Appellant's request was untimely made under the jointly established case management schedule. *See* O.A.C. 3746-6-01(B) (the Commission may order the parties to submit a case management schedule establishing discovery deadlines). At the time he began making his motions, he did not seek leave to reopen discovery. He also signed his request by pre-dating his signature to reflect the prior deadline of October 18 (and writing "NUNK PRO TUNK") when the notarization showed that service could not have occurred until October 24 or after.

**{¶49}** Appellant's later requests for production of documents were even more untimely. All of the requests were designed to investigate whether human remains from those killed by terrorists were interred at the site during the alleged disposal of World Trade Center debris. For instance, his November 7 filing specified: "what

Appellant is looking for is proof of the Bodies of those who died at 9/11 in New York, that were not verified, as persons, that were sent to Youngstown, Ohio where the material was ground up then transported, to the Negley site where the body parts, (that were ground up with the other material) was dumped at the Negley site as garbage." As Appellees point out, Appellant does not specify the particular ruling protested. The failure to do so is to his detriment for our purposes. In any event, Appellant's brief confirms that his World Trade Center theory was the continuing purpose of his document requests.

{¶50} Moreover, the Commission could rationally conclude that the information sought did not appear "reasonably calculated to lead to the discovery of admissible evidence." *See* O.A.C. 3746-6-01(A)(2). And, the Commission could find the information not "relevant to the subject matter of the appeal." *See id.* The theory propounded by Appellant was not set forth in his notice of appeal to the Commission or in his verified complaints before the Director. The case was about claims of improper discharge of fluid with allegedly excessive amounts of concerning substances from under the landfill into streams, with an additional but related allegation that the Director and his agents did not sufficiently investigate.

{¶51} Although the hearing was to proceed as a de novo hearing because there was no adjudicatory hearing before the Director, there is necessarily a topical limit, i.e. the topics on which discovery is sought must be "relevant to the subject matter of the appeal. *See* O.A.C. 3746-6-01(A)(2). *See also* R.C. 3745.05(A) ("documents or record relevant or material to the inquiry"). Appellant did not sufficiently connect his World Trade Center theory to his discharge into waterway allegations.

{¶52} Additionally, Tervita asserted to the Commission that it had no evidence indicating material from the World Trade Center was brought to its Penn-Ohio facility. Tervita also reported to the Commission that public information establishes that most of the World Trade Center debris was trucked to a landfill on Staten Island where the government spent millions of hours sifting through the debris for human remains before the material was disposed of in a dedicated forty acre area. As Appellees

maintain, a party cannot produce what it does not possess. *See, e.g., Cireddu v. Clough*, 11th Dist. No. No. 2013-L-092, 2014-Ohio-2454, ¶ 46. It was a matter within the Commission's discretion as to whether the non-movant's assertion was credible. *See id.* Appellant's first three assignments of error are overruled.

ASSIGNMENT OF ERROR NUMBER FOUR

**{¶53}** Appellant's fourth and final assignment of error alleges:

"The Environmental Review Appeals Commission created an ERROR when it refused to allow an expert for the Appellant, Dennis Scott Wallace to go onto the property of the Tervita Dump Facility to have test taken of the streams and or seeps after Dennis Scott requested the same through Tervita and then filed a request to go onto the property with the expert to test the streams and or seeps with The Environmental Review Appeals Commission and was denied the same."

**{¶54}** Appellant contends that he had a right under the discovery process to enter the property with an expert because he needed to test for contaminants and to determine if the items Appellees referred to as "seeps" were actually streams. In October of 2013, near the discovery deadline for fact discovery, Appellant served two requests for production of documents relating to water testing and hydrology. He did not seek to enter the property for testing until March of 2014. His request was framed as a "Request to Enter Tervita's Property To Collect Samples under Discovery of Streams And Seeps for Macroinvertebrate Sampling * * * to have test taken of Stream but labeled Seep No. (5)." Appellant also filed a brief request on April 21, 2014, asking the Commission to order Tervita to allow access to the property for testing of the water source.

**{¶55}** Appellant's request did not explain that he wished to *prove* that a seep was a stream as he asserts on appeal; rather, his request indicates he wished to test for macroinvertebrates. Tervita suggests that the request was vague and insufficient to allow a response. Tervita also urges that there was no indication that macroinvertebrates were related to the subject matter of the appeal. Both requests were untimely with no explanation for the delay, and no leave for a late request was granted.

**{¶56}** As Tervita additionally points out, permission to enter the land of another for inspection and other purposes is not listed in discovery provisions governing proceedings before the Commission. Rather, the O.A.C. 3746-6-01(A)(2) merely provides: "Discovery may be obtained through one or more of the following methods: interrogatories, requests for the production of documents, electronically stored information or things; depositions; and requests for admission."[2]

**{¶57}** No explanation of relevancy or affidavit with efforts at resolution was attached to Appellant's filings. Pursuant to O.A.C. 3746-6-08(B): "No motion to compel discovery shall be filed under this rule until the party seeking discovery has exhausted all other reasonable means of resolving any differences with the party or person from whom discovery is sought."

**{¶58}** A motion to compel discovery shall also be accompanied by: (1) a memorandum in support, setting forth (a) the specific basis of the motion, with copies of any statutes, ordinances, or case law relied upon, (b) a brief explanation of how the information sought is relevant to the pending proceeding, and (c) responses to any objections raised by the party or person from whom discovery is sought; (2) copies of any specific discovery requests which are the subject of the motion to compel, and copies of any responses or objections thereto; and (3) an affidavit setting forth the efforts that have been made to resolve any differences with the party from whom discovery is sought. O.A.C. 3746-6-08 (B). Compliance with this section is lacking.

**{¶59}** In sum, the Commission did not abuse its discretion in denying Appellant's untimely and unsupported request to compel Tervita to allow him onto the property for macroinvertebrate testing of a stream labeled seep number five. This

---

[2] *Compare* Civ.R. 26(A), which provides: "Parties may obtain discovery by one or more of the following methods: deposition upon oral examination or written questions; written interrogatories; production of documents, electronically stored information, or things or *permission to enter upon land or other property, for inspection and other purposes*; physical and mental examinations; and requests for admission." (Emphasis added.) Some administrative boards have discovery provisions mentioning entry upon lands. See, e.g., O.A.C. 5717-1-11(A) (Board of Tax Appeals). By omitting this language in the Commission's discovery provisions, consideration may have been given to Ohio EPA's entry and testing abilities and expertise.

assignment of error is overruled. Accordingly, the Commission's decision to dismiss for failure to prosecute is upheld.

Donofrio, P.J., concurs.

Waite, J., concurs.